**CHURCH OF SCIENTOLOGY OF TEXAS**

v.

**INTERNAL REVENUE SERVICE.**

No. A 91 CA 152.

United States District Court,
W.D. Texas,
Austin Division.

March 9, 1993.

Stephen Greenberg, Small, Craig & Werkenthin, Homer Allen Hill, Jr., Austin, TX, W. Gary Fowler, Littler, Mendelson, Fastiff & Tichy, Dallas, TX, Kendrick L. Moxon, Bowles & Moxon, Pro hac vice, Hollywood, CA, for plaintiff.

Mollie S. Crosby, U.S. Attorney's Office, Austin, TX, Josh Eagle, U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER

SPARKS, District Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

The Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. The Court has reviewed the parties' cross-motions for summary judgment and enters the following:

## I.

The Freedom of Information Act, 5 U.S.C. § 552, was enacted to give the public greater access to government records. *See, Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Generally, it requires each government agency to grant the public access to all records of the agency. *See,* 5 U.S.C. § 552(a)(1–3). A member of the public begins the process by filing a "request" for records under the Act. The agency is then required to search its files for any document(s) responsive to the individual's request and make the records "promptly" available to the individual. *See,* 5 U.S.C. § 552(a)(3).

Section (b) of the act creates nine exemptions from compelled disclosure. *See,* 5 U.S.C. § 552(b). The exemptions are to be narrowly construed. *See, U.S. Dept. of Justice v. Julian,* 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988); *Department of Air Force v. Rose,* 425 U.S. at 361, 96 S.Ct. at 1599. If the agency claims one or more of the nine exemptions apply to a requested document, the agency may withhold the document. It must, however, notify the person that it is withholding the document and give its reasons for withholding the document. *See,* 5 U.S.C. § 552(a)(6)(A)(i). The Act also requires the agency to segregate and disclose "any reasonably segregable portion of a record" after deleting the portions which are exempt. *See,* 5 U.S.C. § 552(b).

If documents are withheld, the Act permits the individual to file a complaint in Federal district court once the individual exhausts his administrative remedies. The agency has the burden of establishing the exempt status of the record. *See,* 5 U.S.C. § 552(a)(4)(B). The district court determines the matter *de novo* and may examine the documents in camera. *See,* 5 U.S.C. § 552(a)(3)(B).

## II.

On December 10, 1990, Plaintiff, Church of Scientology of Texas (CST or C of S Texas), sent two letters to Defendant, Internal Revenue Service (IRS), requesting information under the Freedom of Information Act. One letter sought "a copy of all records, documents, notes, control cards, subject files, tapes, buck slips, electronic information, and/or information relating to or concerning C of S Texas Church of Scientology and/or Scientology, and Dianetics in the *Inspection Division* of the National Office [of the IRS], including any records on compliance projects." (emphasis added) The request also included "any records that refer to C of S Texas or that are retrievable in a search for files listed in C of S Texas or Scientology's name." The request was limited "to records from January 1981 to the present." The second letter requested the same information but from the *"Exempt Organization files"* and covered the period "from January 1974 to the present." IRS employees located 2167 pages of records responsive to the requests. The IRS released some records in full, released portions of some records, and withheld in full some records claiming they were exempt under the FOIA. After exhausting its administrative remedies, the CST filed cause A–91–CA–152 on February 27, 1991, seeking to compel the IRS to release the records withheld under the Inspection Division request. The next day, on February 28, 1991, the CST filed cause A–91–CA–159 seeking court ordered release of the records withheld under the Exempt Organization request. The two causes were consolidated by court order dated March 7, 1991 and transferred to this Court's docket on January 10, 1992.

The IRS does not contest that the withheld records fall within the FOIA's coverage, but asserts that they are exempt from disclosure by one or more of the nine exemptions contained in Subsection (b) of the Act. Specifically, the IRS claims the withheld records are exempt from disclosure by Exemptions 2, 3, 5, 6 and 7. It insists "that it has complied in good faith with the requirements of the FOIA and that it has submitted materials more than sufficient to support its withhold-

ing of certain documents under the exemption provisions of the statute." *See,* Internal Revenue Service's *Statement,* p. 5 (May 20, 1992).

In July 1991, pursuant to the Magistrate's order, the IRS served upon the CST and filed with the district court a *Vaughn* Index [1] (Index). The Index allegedly describes the contents of 2167 pages of records and details the legal basis for withholding each record or portion thereof that the IRS withheld. The Index itself is 534 pages. To further support its position that the records were properly withheld, the IRS submitted the affidavits of John Fuhrman [2], Roderick H. Darling [3] and Steven D. Raisch [4], all IRS employees who searched for records responsive to the CST's requests and reviewed those records to determine if they should be disclosed. The CST, dissatisfied with the Index, filed a motion for a more detailed Index. The magistrate denied the motion. The CST did not appeal the order, but, subsequently, filed a "Counter–Vaughn Index" in which it attempts to demonstrate why it believes the IRS's Index is inadequate and, where possible, why the records are not exempt under subsection (b) of the Act. The CST also submitted affidavits to further support its position.

The CST insists the IRS has not met its legal burden to justify withholding the documents. It contends the Index submitted by the IRS is insufficient because it is conclusory and does not describe each document with sufficient detail to permit the Court to make an intelligent *de novo* determination whether the entire document is exempt, a portion of the document is exempt or none of the document is exempt. Additionally, the CST insists that even if the Index is sufficiently descriptive, the records are nevertheless subject to disclosure because they do not fall within one or more of the exemptions. Therefore, it contends the IRS has failed to meet its burden and should be required to produce the requested records to the CST.

 Congress did not intend for a court to review in camera every record an agency withholds. A *Vaughn* Index relieves a court of this burden. It allows a court to effectively and efficiently evaluate whether a withheld record is exempt; informs a court what information is contained in a withheld record so that the court can determine *de novo* if the record is in fact exempt; and gives the requester a meaningful opportunity to contest the agency's claim of exemption. The Index must therefore adequately describe the record, state what exemption the agency claims and explain why the agency believes the record falls within the exemption. The agency does not have to describe a record to the extent that the description compromises the secrecy of the record. A description is sufficient if it enables a court to reach its own conclusion as to what is in the record. Mere conclusory and generalized statements that a record falls within an exempt category, however, are insufficient. *See, Vaughn v. Rosen,* 484 F.2d 820, 826–827 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *See also, N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) ("The in camera review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved; it thus does not mandate that the documents be individually examined in every case."); *Schiller v. N.L.R.B.,* 964 F.2d 1205, 1207 (D.C.Cir. 1992); *National Treasury Employees Union v. U.S. Customs Service,* 802 F.2d 525, 527 (D.C.Cir.1986).

1. *See, Vaughn v. Rosen,* 484 F.2d 820, (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). A *Vaughn* Index is designed to permit a court to efficiently and effectively determine an agency's exemption claim to an FOIA request. The Fifth Circuit has adopted the *Vaughn* Index. *See, Stephenson v. Internal Revenue Service,* 629 F.2d 1140 (5th Cir.1980).

2. Fuhrman is an attorney with the Office of Chief Counsel, Internal Revenue Service, assigned to the staff of the Assistant Chief Counsel (Disclosure Litigation).

3. Darling is a Conferee–Reviewer in the EO Technical Divisional, Office of the Assistant Commissioner (Employee Plans and Exempt Organizations), Internal Revenue Service.

4. Raisch is a Staff Inspector in the Disclosure Section of the Internal Revenue Service Inspection Office in Washington, D.C.

 The Court is entitled to rely on the accuracy of the Vaughn Index.

FOIA litigation is not immune from our open, adversary process. In camera, ex parte review, though permitted under FOIA and sometimes necessary, is generally disfavored—it 'is not a substitute' for the government's obligations to justify its withholding in publicly available and debatable documents, and it should be invoked only when the issue at hand " 'could not be otherwise resolved.' " The purpose of the *Vaughn* Index is to "permit adequate adversary testing of the agency's claimed right to an exemption," and those who contest denials of FOIA requests—who are, necessarily, at a disadvantage because they have not seen the withheld documents—can generally prevail only by showing that the agency's *Vaughn* Index does not justify withholding information under the exemptions invoked. FOIA litigants are entitled to assume that the agency's *Vaughn* Index is accurate in every detail. And so is the court. There is no excuse for submitting a *Vaughn* Index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate.

*Schiller,* 964 F.2d at 1209 (citations omitted).

 The *Vaughn* Index submitted by the IRS is sufficient. Contrary to the CST's suggestion, the Index contains more than conclusory statements. The Index identifies each record, describes each record with sufficient detail to permit the Court to determine what it contains, states the exemption or exemptions the IRS contends apply, and explains why the IRS believes each record or portion thereof is exempt. In sum, the Index permits the Court to effectively and efficiently evaluate the contents of each record and make an intelligent decision whether any portion of it is exempt. It also gives the CST a meaningful opportunity to contest the IRS's claim of exemption.

## III. DATE RESTRICTIONS

 The IRS withheld a number of records claiming they were outside the scope of the requests because they were generated subsequent to the date of the requests. The FOIA does not expressly or implicitly require an agency to locate documents outside the dates specified in the request. Furthermore, it is unreasonable to expect an agency to locate and determine the disclosability of documents generated subsequent to the date specified in a request. The agency should only be required to make one thorough search per request. Therefore, there has to be a temporal deadline for documents that satisfy the request. The most logical deadline is the date specified in the request. A different deadline would require the agency to make numerous searches—one when the request is filed, one after reviewing the documents responsive to the request, and if this last search locates any records, at least one more after determining whether those records are subject to disclosure. It is easy to see how a search could be a never ending process if the cut-off date for records responsive to the request is a date other than the date specified in the request. Additionally, The FOIA "places a premium on rapidly processing FOIA requests." *Bonner v. U.S. Dept. of State,* 928 F.2d 1148, 1152 (D.C.Cir. 1991). If an agency has to conduct more than one search, the response time will be slower. If the requester desires documents from dates other than those specified in the request the requester simply has to file another request. This makes the most sense from an administrative standpoint. Documents generated subsequent to the date specified in the request are outside the scope of the request and need not be disclosed.

## IV. EXEMPTIONS

The Court has determined the matter *de novo.*

### A. Exemption 2

 The IRS contends some of the withheld records are exempt under 5 U.S.C. § 552(b)(2) (Exemption 2). Records that relate "solely to the internal personnel rules and practices of an agency" are exempt from disclosure. 5 U.S.C. § 552(b)(2) (Exemption 2). Records that relate "solely to the internal personnel rules and practices of an agen-

cy" are exempt from disclosure. 5 U.S.C. § 552(b)(2). Records are exempt under Exemption 2 if they are internal records that (1) relate to trivial agency matters of which the public does not have a legitimate interest or (2) if disclosure would risk circumvention of an agency regulation. *See, Rose,* 425 U.S. at 369, 96 S.Ct. at 1603; *Schiller,* 964 F.2d at 1207; *National Treasury Employees Union,* 802 F.2d at 528.

The D.C. Circuit recently stated the Exemption 2 test as:

> If the threshold test of predominant internality is met, an agency may withhold the material "by proving either [1] 'disclosure may risk circumvention of agency regulations,' or [2] 'the material relates to trivial administrative matters of no genuine public interest.'"

*Schiller,* 964 F.2d at 1207, (quoting, *Schwaner v. Department of Air Force,* 898 F.2d 793, 794 (D.C.Cir.1990).)

■ The IRS withheld documents or portions of documents containing information on the allocation of IRS resources claiming they were exempt under Exemption 2. For example, the IRS withheld page 757[5] described as:

> Form 1038, Advance of travel funds, dated 10/22/90, with handwritten entries.
>
> Personal information about lower level Service employee including [social security number], home address. Information about allocation of resources and employee handwriting.

The justification for withholding the resource allocation information states:

> The withheld information contains or consists of matters related to the allocation of human resources to the investigation by Inspection as well as other personnel matters relating to Service employees involved in the investigation. The withheld information therefore relates solely to the inter-

nal personnel rules and practices of the agency.

The allocation information meets the "predominant internality" test. However, it fails the second part of the test. First, there is no evidence that disclosure might "risk circumvention of agency regulations." Second, although the information "relates to trivial administrative matters," it *is* information in which the public has a genuine interest. This is taxpayers' money and the public is entitled to know how the IRS is allocating it. Consequently, unless otherwise exempt, the information must be disclosed.

■ The other documents and portions of documents withheld pursuant to Exemption 2 are exempt. For example, the IRS withheld pages 749–752[6] described as:

> Page 749 is a handwritten routing slip dated 11/20/90 from a Service employee to Inspection employees regarding a proposed meeting. The attachments concern potential attendees and other details concerning the proposed meeting. (pages 750–752).
>
> Identities of lower level employees, employee handwriting, matters relating to internal personnel rules and practices of the Service.

The IRS's justification states:

> The withheld information contains or consists of matters related to the allocation of human resources to the investigation by Inspection as well as other personnel matters relating to Service employees involved in the investigation. The withheld information therefore relates solely to the internal personnel rules and practices of the Service.

The public does not have a legitimate interest in such trivial agency matters as a routing slip. Consequently, the material relates solely to trivial administrative matters of no genuine public interest and the record and was properly withheld.

---

**5.** The IRS also withheld these pages or portions thereof pursuant to Exemptions 6 and 7(C).

**6.** The IRS also withheld these pages or portions thereof pursuant to Exemptions 6 and 7(C).
 The page numbers cited in the order correspond to the page number of the document the

IRS withheld, not the page number in the Vaughn or counter-Vaughn Indexes. (e.g. pages 749–752 of the 2167 pages the IRS withheld and not pages 749–752 of the Vaughn Index or the counter-Vaughn Index)

### Exemption 3

■ 5 U.S.C. § 552(b)(3) exempts from disclosure all records that are "specifically exempted from disclosure by statute" other than the FOIA itself. Exemption 3 authorizes an agency to withhold only those portions of a record that are expressly protected by statute. *See, Julian,* 486 U.S. at 11, 108 S.Ct. at 1612. The IRS withheld records under exemption 3 relying upon 26 U.S.C. § 6103(a); Federal Rule of Criminal Procedure 6(e); and 5 U.S.C. Appendix 4, § 205. Each will be discussed separately.

### (1) Records Relating to Tax Returns

■ 26 U.S.C. § 6103(a) is an exempting statute for FOIA purposes. *See, Church of Scientology of California v. I.R.S.,* 484 U.S. 9, 11, 108 S.Ct. 271, 273, 98 L.Ed.2d 228 (1987); *Linsteadt v. I.R.S.,* 729 F.2d 998, 1003 (5th Cir.1984). It states that "returns and return information shall be confidential." *See,* 26 U.S.C. § 6103(a). A "return" is defined as "any tax or information return, declaration or estimated tax, or claim for refund" including supporting schedules, attachments and lists. *See,* 26 U.S.C. § 6103(b)(1). "Return information" is:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deduction, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, or liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....

*See,* 26 U.S.C. § 6103(b)(2). "Return Information" *does not* include:

> such term does not include data in a form which cannot be associated with, or other-

wise identify, directly or indirectly, a particular taxpayer.

*Id.* Thus, "tax returns" are exempt from disclosure, but "return information" may be disclosed if it is "in a form" that keeps the identity of the taxpayer confidential. The Supreme Court has interpreted "in a form" to mean more than simply removing taxpayer identifying information. *See, Church of Scientology of California,* 484 U.S. at 18, 108 S.Ct. at 276. Thus, simply removing identifying details does not permit the disclosure of otherwise confidential return information. *See, Id.* "In a form" refers to statistical studies, compilations and other similar reformulation of return information. *See, Id.* 484 U.S. at 17–18, 108 S.Ct. at 276. So, if the IRS takes return information from various taxpayers and creates a statistical study or a compilation, the statistical study or compilation would be subject to disclosure.

■ CST contends it is entitled to the returns because the IRS has not established "the documents it is attempting to withhold pursuant to Exemption 3 are truly third party tax return information" and because the IRS has not provided sufficient facts to "demonstrate that the information [is] return information." The Court is unaware of any way, and CST has not provided any suggestions, the IRS can establish a record is third party return information other simply stating that it is. Providing details to establish a record is "third party return information" would compromise the confidentiality required by § 6103(a). The Court also believes a statement by the IRS in the Index that the records are return information is sufficient. The other alternative is for the IRS to recite the pertinent parts of the "return information" definition from § 6103—i.e. "This record contains a taxpayer's identity, the nature, source, and amount of his income...."— which would only serve to make the Index unnecessarily longer than it already is. This would not enable the CST to challenge the withholding in any greater depth.

■ The documents and portions of documents containing taxpayer return information are exempt under Exemption 3. For example, the IRS withheld pages 70–78 [7] described as:

___

7. The IRS also withheld this record under Ex- emptions 5 and 7(C).

Page 70 is a handwritten transmittal slip, dated 12/13/90, regarding the attached affidavits. The two affidavits are executed, one is for *in camera* submission (pages 71–72) and the other is for public filing (pages 73–78). Both were prepared in conjunction with respect to a litigation other than the instant case. Neither affidavit has been filed in the other litigation.

Third party return information, documents which are not finalized and therefore predecisional inasmuch as they have not been filed in court, attorney work product, identities of lower level Service employees, and employee handwriting.

The IRS's justification for withholding the return states:

The withheld information consists of or contains return information of (a) third party taxpayer(s). Disclosure of this information is prohibited by I.R.C. 6103(a).

Another example, the IRS withheld pages 1382–1387[8] described as:

Pages 1382–1383 are copies of computer printouts of third party return information.

Third Party return information.

The IRS gives the same justification as pages 73–78 for withholding this record.

The records were properly withheld as they contain third party tax return information. There is no indication that either of the records is a compilation, a statistical study or other similar reformulation of return information. Rather, the information is return information of a single third party. As such, it is exempt from disclosure even if the IRS removes all identifying information.

### (2) Grand Jury Proceedings

 Federal Rule of Criminal Procedure 6(e) is also an exempting statute for purposes of the FOIA. *See, Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 867–868 (D.C.Cir.1981) (Rule 6(e)'s "ban on disclosure is for FOIA purposes absolute and falls with-

in subpart (A) of Exemption 3."). Rule 6(e) provides generally that proceedings occurring before a grand jury may not be disclosed. The Rule provides for limited exceptions, none of which are applicable here. The agency must establish a nexus between the record and the operation of the grand jury, *See, Senate of Puerto Rico v. Department of Justice,* 823 F.2d 574, 582 (D.C.Cir. 1987):

We have never embraced a reading of Rule 6(e) so literal a to draw "a veil of secrecy ... over all matters occurring in the world that happen to be investigation by a grand jury." There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers; as the district court correctly observed, the touchstone is whether disclosure would "tend to reveal some secret aspect of the grand jury's investigation" such matters as " 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions or jurors, and the like.' " The disclosure of information "coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury" is not prohibited. Automatically sealing all that a grand jury sees or hears would enable the government to shield any information from public view indefinitely by the simple expedient of presenting it to the grand jury.

(footnotes and citations omitted) (emphasis in original); *See also, Fund for Constitutional Government* 656 F.2d at 869, (quoting, *SEC v. Dresser Industries, Inc.,* 202 U.S.App.D.C. 345, 359, 628 F.2d 1368, 1382 (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).) (The "scope of the secrecy is necessarily broad," encompassing testimony before the grand jury and "information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.' ".)

**8.** The IRS also withheld this page or portions thereof under Exemption 7(C).

■ The IRS withheld page 1804 [9] pursuant to Exemption 3 in conjunction with Rule 6(e). The IRS describes the record:

Memorandum dated 9/17/86 to Assistant Commissioner (Inspection) from Regional Inspector, Western Region containing responses to inquiries regarding complaint letter from President of Church of Scientology International. Employee signature.

Third party return information, identities of lower level Service employees and third parties, employee handwriting, information regarding a grand jury, and information provided by a confidential source.

It justifies withholding the grand jury information:

"Certain of the withheld information consists of or contains information concerning grand jury proceedings, testimony, or other grand jury activities or references thereto. Disclosure of this information is prohibited under Rule 6(e) of the Federal Rules of Criminal Procedures."

Disclosure of this information would disclose the substance of testimony before the grand jury. It is therefore exempt from disclosure.

### (3) Financial Disclosure Statements

■ The IRS withheld pages 629–671 [10] pursuant to Exemption 3 in conjunction with the Ethics in Government Act (EGA), 5 U.S.C., Appendix 4, § 201 et seq., claiming that the CST had not complied with the disclosure requirements of the EGA. The IRS described pages 629–671 as:

"Financial Disclosure Reports, employee handwriting, and identities of Service employees."

The justification for withholding the record states:

Title 5, Appendix 4, section 201, et seq. "Executive Personnel Financial Disclosure Requirements" provides a comprehensive scheme which regulates the filing of detailed personal financial statements by government executives. Section 205 "Custody of and public access to reports" spe-

cifically provides that Financial Disclosure Reports may be disclosed only in accordance with the requirements of section 205(b)(2). Because plaintiff's FOIA request does not meet these requirements, the Service has withheld these reports.

Section 205(a) of the EGA provides that financial disclosure statements shall be made available to the public in accordance with subsection (b). Subsection (b)(2) states that a financial disclosure statement may not be disclosed unless and until the requester makes a written application stating the "person's name, occupation and address; the name and address of any other person or organization on whose behalf the inspection or copy is requested; and that such person is aware of the prohibitions on the obtaining or use of the report." Although the EGA and the FOIA both authorize the disclosure of the financial disclosure statements, a requester must comply with the disclosure requirements of the EGA before it is entitled to the statements. The requester cannot use the FOIA to circumvent the express requirements of the EGA. The IRS contends that the CST did not comply with the express requirements of the EGA, a contention that the CST does not deny. Accordingly, the IRS properly withheld the record pursuant to Exemption 3.

### Exemption 5

■ Exemption 5 permits the IRS to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *See,* 5 U.S.C. § 552(b)(5). The purpose of Exemption 5 is to protect the " 'decision making process of government agencies.' " *See, National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (citations omitted). The Exemption protects documents not normally discoverable in civil litigation with the agency, including: materials which would be protected under the governmental deliberative process privilege, the attorney

---

9. The IRS also relied on Exemptions 3 in conjunction with I.R.C. 6103(a), 7(C) and 7(D)· in withholding this page or portions thereof.

10. The pages or portions thereof were also withheld pursuant to Exemption 7(C).

work-product privilege and the attorney-client privilege. *See, Federal Trade Commission v. Grolier Incorporated,* 462 U.S. 19, 26, 103 S.Ct. 2209, 2214, 76 · L.Ed.2d 387 (1983); *Sears, Roebuck & Co.,* 421 U.S. at 150–161, 95 S.Ct. at 1515–1522; *Dow Jones & Co., Inc. v. Department of Justice,* 917 F.2d 571, 573 (D.C.Cir.1990). Exemption 5's test "is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Grolier Incorporated,* 462 U.S. at 26, 103 S.Ct. at 2214, (citing, *Sears, Roebuck & Co.,* 421 U.S. at 148–149, 95 S.Ct. at 1515.)

 A document may be inter-agency or intra-agency even if it was not created by an agency employee. This situation may arise when an agency hires an outside consultant. The 5th Circuit has adopted a functional test to determine whether a document created by someone outside the agency is nevertheless an inter-agency or intra-agency document. *See, State of Texas v. I.C.C.,* 889 F.2d 59, 61 (5th Cir.1989). If the "agency has 'a special need for the opinions and recommendations of temporary consultants,' documents reflecting such information should be exempt ·from disclosure." *Id.*

### (1) Executive Deliberative Process

 The IRS withheld a number of documents pursuant to Exemption 5's executive deliberative process privilege. The·executive deliberative process privilege protects inter-agency or intra-agency documents that disclose deliberative or policy-making processes of the agency. *See, Sears, Roebuck & Co.,* 421 U.S. at 153, 95 S.Ct. at 1517–1518. Communications subsequent to the agency decision do not effect the decision making process and are not exempt. *See, Id.* 421 U.S. at 151, 95 S.Ct. at 1517. Furthermore, "purely factual material appearing in [deliberative] documents in a form that is severable without compromising the private remainder of the documents" is not exempt. *See, Mink,* 410 U.S. at 91, 93 S.Ct. at 838. Accordingly, the privilege exempts documents reflecting an agency's thinking process in formulating its policy and law, but documents detailing and explaining the agency's policy and law are not exempt. *Sears, Roe-*

*buck & Co.,* 421 U.S. at 153, 95 S.Ct. at 1517–1518. If, however, an agency adopts or incorporates by reference a document covered by the Exemption 5 into a final opinion, that document loses Exemption 5 status and must be disclosed unless it falls within the coverage of another exemption. *See, Id.* 421 U.S. at 161, 95 S.Ct. at 1521–1523.

 The documents and portions of documents revealing the deliberative process of the IRS are exempt under Exemption 5. For example, the IRS withheld pages 731–733 [11] which it describes as:

> Page 731 is a handwritten Routing Slip dated 10/11 to Inspection employees containing thoughts and recommendations. Page 732 is a handwritten note dated 10/10/90 to an Inspection employee concerning a briefing, and page 733 is a handwritten Memo Routing Slip date 10/10 to Inspection employees regarding a briefing. Predecisional material, identities of lower level Service employees, and employee handwriting.

The IRS's explanation for withholding the record states:

> The withheld information reflects employee(s)' advice, opinions, and/or recommendations concerning the open investigation of the Inspections Branch, Internal Security Division, Office of Chief Inspector (Inspection), regarding incidents of actual and/or perceived harassments and/or unusual occurrences reported by IRS personnel whose official duties included assignments to Scientology-related matters, preliminary analysis of information received by Inspection regarding such matters, and/or proposed courses of action with respect thereto, which comprised part of the Service's deliberation and preceded the conclusion of the investigation.

The record is a predecisional document the disclosure of which· would interfere with the IRS's deliberative and policy-making decisions. There is no evidence that the IRS has adopted or incorporated by reference this document into a final opinion. Furthermore, there is no factual information in the document which can be segregated and disclosed.

---

**11.** The IRS also withheld these pages or portions thereof pursuant to Exemption 7(C).

**1154**

Consequently, the IRS properly withheld the document.

**(2) Attorney–Client and Work–Product**

 The IRS also withheld a number of documents pursuant to Exemption 5's attorney-client and attorney work-product withholding provisions. Documents protected by the attorney-client and attorney work-product privileges are not "routinely" or "ordinarily" available to opposing parties in litigation and thus are exempt under Exemption 5. *See, Grolier Incorporated,* 462 U.S. at 27, 103 S.Ct. at 2214. The attorney-client privilege protects communications between an attorney and his client that are intended to be confidential. *See, Granviel v. Lynaugh,* 881 F.2d 185, 192 (5th Cir.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990), (citing, *Wells v. Rushing,* 755 F.2d 376, 379 n. 2 (5th Cir.1985)); *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989). The work-product privilege protects documents prepared in anticipation of litigation that reveal an attorney's legal theories and mental impressions. *See, Dunn v. State Farm Fire & Casualty Company,* 927 F.2d 869, 875 (5th Cir.1991); FED.R.CIV.P. 26(b)(3).

 Attorney work-product materials are protected even if they were not prepared for a specific claim; it is sufficient if they were prepared in anticipation of foreseeable litigation. *See, Schiller,* 964 F.2d at 1209. The privilege applies "without regard to the status of the litigation for which it was prepared." *Grolier Incorporated,* 462 U.S. at 28, 103 S.Ct. at 2215; *See also, Nadler v. U.S. Dept. of Justice,* 955 F.2d 1479, 1492 (11 Cir.1992) (The privilege applies to documents prepared in anticipation of and during litigation.)

 Furthermore, unlike the deliberative process privilege, the work-product and attorney-client privileges protect factual materials contained in the privileged documents. *See, Nadler,* 955 F.2d at 1492, (citing, *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1185–86 (D.C.Cir.1987).)

 The documents and portions of documents containing attorney-client and at-

torney work-product materials and information are exempt under Exemption 5. For example, the IRS withheld pages 70–78 [12] described as:

> Page 70 is a handwritten transmittal slip, dated 12/13/90, regarding the attached affidavits. The two affidavits are executed, one is for *in camera* submission (pages 71–72) and the other is for public filing (pages 73–78). Both were prepared in conjunction with respect to a litigation other the instant case. Neither affidavit has been filed in the other litigation.

> Third party return information, documents which are not finalized and therefore predecisional inasmuch as they have not been filed in court, attorney work product, identities of lower level Service employees, and employee handwriting.

The explanation for withholding the document states:

> The withheld information was prepared by or under the direction of government counsel in contemplation of litigation.

The document was prepared by or under the direction of government counsel in preparation of foreseeable litigation. Consequently, the document is attorney work-product material and is exempt. Another example, the IRS withheld page 79 [13] described as:

> Routing and transmittal slip date June 26, 1990, from Chief Counsel attorney to Inspection employee.

> Attorney-client communications, identities of lower level Service employees and employee handwriting.

The explanation states:

> This communication between Service personnel and government attorneys relates to factual background concerning the investigation by the Inspections Branch, Internal Security Division.

The document consists of attorney-client communications. Consequently, it is exempt.

**Exemption 6**

Exemption 6 authorizes an agency to withhold "personnel and medical files and similar

---

**12.** The IRS also withheld these pages or portions thereof pursuant to Exemptions 3 and 7(C).

**13.** The page or portions thereof was also withheld under Exemption 7(C).

files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *United States Department of State v. Washington Post Company,* 456 U.S. 595, 599, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358 (1982).

■ The first question is what type of files are covered by Exemption 6. The Exemption obviously covers medical and personnel files. The Exemption also applies to "similar files." "Similar files" is not defined in the act; however, the Supreme Court has addressed the issue:

> In sum, We do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual."

*Id.* 456 U.S. at 601–602, 102 S.Ct. at 1961, (quoting, H.R.Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2428.) Consequently, Exemption 6 applies to any file in the possession of an agency that contains personal information about an individual.

■ If the information is contained in a protected file, it is exempt from disclosure if disclosure would "constitute a clearly unwarranted invasion of [the individual's] personal privacy." This requires balancing the individual's right of privacy against preserving the FOIA's purpose to "open agency action to the light of public scrutiny." *Rose,* 425 U.S. at 372, 96 S.Ct. at 1604; *See also, Federal Labor Relations Authority v. United States Department of Defense,* 975 F.2d 1105, 1110 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3534 (U.S. January 19, 1993) (No. 92–1223), (citing, *Halloran v. Veterans Administration,* 874 F.2d 315, 319 (5th Cir. 1989) ("... requires balancing the specific privacy interests implicated by the information against the particular public interests

that may be served—or disserved—by the disclosure of the information.").) Exemption 6 does not, however, protect nonconfidential information, even if it is contained in a protected file. *See, Rose,* 425 U.S. at 372, 96 S.Ct. at 1604.

■ The documents and portions of documents withheld pursuant to Exemption 6 were properly withheld. For example, the IRS withheld pages 868–884.[14] The IRS describes the record as:

> Page 868 is a handwritten note containing the names of several employees and suggested investigation of a Service employee. Pages 869–885 are personnel documents relating to this employee which include the SF–171, the employee's evaluation, and other promotion package information regarding this and other employees applying for a particular position.

> Identities of lower level Service employees, employee handwriting, and other personal information regarding various Service employees in the promotion package.

Another example, the IRS withheld page 757[15] described as:

> Form 1038, Advance of travel funds, dated 10/22/90, with handwritten entries.

> Personal information about lower level Service employee including [social security number], home address. Information about allocation of resources and employee handwriting.

The IRS gives the same justification for each record:

> Because public identification of these Service employees could conceivably subject them to harassment and annoyance in their private lives and because the Internal Revenue Service can discern little or no public interest in this information, the Service has determined that release of personal or identifying information contained in the withheld materials would constitute a clearly unwarranted invasion of personal privacy of these persons.

> The Service is aware that Scientology related entities and/or persons affiliated or

---

14. Pages 868–884 or portions thereof were also withheld pursuant to Exemption 7(C).

15. Page 757 or portions thereof was also withheld pursuant to Exemptions 2 and 7(C).

believed to be affiliated with Scientology have a practice of aggressively harassing its perceived enemies. This awareness was gained from the writings attributed to Scientology's founder, Scientology scriptures, the court opinions detailing such action, and the incidents of harassment reported in the *Los Angeles Times* series published between June 24, and June 29, 1990, in the *Time* magazine article date May 6, 1991, in other published material, and in the British Broadcasting Company (BBC) program televised April 1989. The Court is unable to theorize any public interest that may be served by disclosing this information. On the other hand, the individuals have a substantial interest in keeping this information private. The interests involved in this case are drastically different than those present in *Federal Labor Relations Authority*—the CST is not the collective bargaining agent for the IRS employees. *See, Federal Labor Relations Authority,* 975 F.2d at 1109–1110. Furthermore, given the degree of animosity between the CST and the IRS, IRS employees have a substantial privacy interest in keeping personal information confidential. *See, Fuhrman* affidavit pp. 5–13 and authority cited therein. The individual's privacy interests are superior to the public's interest in disclosure and disclosing the records would constitute a clearly unwarranted invasion of the individuals' personal privacy.

### Exemption 7

■ Exemption 7 covers records or information compiled for law enforcement purposes. It was enacted to permit agencies to "keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case." *Robbins Tire & Rubber Co.,* 437 U.S. at 224, 98 S.Ct. at 2318. It subdivides law enforcement records into six different categories. If the record was compiled for law enforcement purposes and falls within one or more of the six subdivisions, the record is exempt. *See, John Doe Agency v. John Doe Corporation,* 493 U.S. 146, 155, 110 S.Ct. 471, 477, 107 L.Ed.2d 462

(1989). The agency does not have to detail document-by-document why each document falls within one of the six categories. The agency must, however, identify which subdivision(s) of Exemption 7 it contends each document falls into and give the court sufficient information to make a *de novo* determination that the document falls within the subdivision. *See, John Doe Agency,* 493 U.S. at 155, 110 S.Ct. at 477; *Robbins Tire & Rubber Co.,* 437 U.S. at 235, 98 S.Ct. at 2323. The IRS has withheld records pursuant to four of the subdivisions.

■ As a threshold requirement, the IRS must prove that the records or information were compiled for law enforcement purposes. *See, John Doe Agency,* 493 U.S. at 151, 110 S.Ct. at 475. Examining the plain language of the Exemption, the Supreme Court has said that it is irrelevant when the record or information was compiled. *See, Id.* 493 U.S. at 153, 110 S.Ct. at 476.[16] The only requirement is that it be "compiled" when the government invokes the exemption. *See, Id.* 493 U.S. at 153–156, 110 S.Ct. at 476–477. "Compiled," the Supreme Court said, is anything "composed of materials collected and assembled from various sources or other documents." *Id.* 493 U.S. at 153, 110 S.Ct. at 476, (citing, *Webster' Third New International Dictionary* 464 (1961); *Webster's Ninth New Collegiate Dictionary* 268 (1983).) This includes documents originally compiled for non-law enforcement purposes. *See, Id.* 493 U.S. at 153, 110 S.Ct. at 476.

### (1) Exemption 7(A)

■ Exemption 7(A) exempts records or information compiled for law enforcement purposes to the extent that the production of the records or information "could reasonably be expected to interfere with enforcement proceedings." The IRS must demonstrate that "disclosure of [the] document would, in some particular, discernable way, disrupt, impede, or otherwise harm the enforcement proceeding." *North v. Walsh,* 881 F.2d 1088, 1097 (D.C.Cir.1989). This occurs if disclosure would inform the party being investigat-

---

**16.** In *John Doe Agency* the Supreme Court permitted an agency to withhold records and information pursuant to Exemption 7 even though the records and information were compiled seven years before the investigation.

ed of the scope or direction of the agency's investigation; potentially subject witnesses or others providing information to the agency to reprisal or harassment; permit the target of the investigation to develop defenses that would enable violations to go unremedied; permit the party being investigated to destroy or alter evidence; or chill the willingness of individuals providing information to the agency to do so. *See, Robbins Tire & Rubber Co.,* 437 U.S. at 239–242, 98 S.Ct. at 2325–2326; *North,* 881 F.2d at 1097; *Alyeska Pipeline Co. v. U.S. EPA,* 856 F.2d 309, 312–313 (D.C.Cir.1988).

 Once the investigation has concluded and there is no reasonable possibility of future law enforcement proceedings related to the requested documents, the documents lose Exemption 7(A) status. *See, Robbins Tire & Rubber Co.,* 437 U.S. at 235, 98 S.Ct. at 2323. If the investigation is open or there is a reasonable possibility of future law enforcement proceedings at the time of the request, the documents are exempt. Furthermore, the agency is not required to monitor the investigation and release the documents once the investigation is closed and there is no reasonable possibility of future proceedings.

FOIA requires the district court to determine *de novo* whether requested information is properly withheld. Bonner argues that the *de novo* standard requires a court to determine whether a document is properly withheld or redacted as of the time of the court's review. FOIA judicial review, however, while *de novo,* remains an assessment of the *agency* decision to withhold a document. That decision, we hold, ordinarily must be evaluated as of the time it was made.

Courts reviewing an agency's action must of necessity limit the scope of their inquiry to an appropriate time frame. In FOIA cases particularly, court review properly focuses on the time the determination to withhold is made, for the Act places a premium on the rapid processing of FOIA requests. To require an agency to adjust or modify its FOIA responses based on post-response occurrences could

create an endless cycle of judicially mandated reprocessing.

*Bonner,* 928 F.2d at 1152 (citations omitted) (emphasis in original).

 The documents and portions of documents withheld pursuant to Exemption 7(A) were properly withheld. For example,[17] the IRS withheld pages 1163–1164 described as:

Page 1163 is a Memorandum of Interview or Activity dated June 21, 1990 in the Western Region, Inspection regarding an open investigation. Page 1164 is a copy of a business card obtained during that investigation.

Information gathered during the course of an open investigation, identities of lower level Service employees and third parties.

The IRS justification for withholding the document states:

The document(s) was/were compiled for law enforcement purposes. The document(s) was/were generated with respect to the open investigation by the Inspection Service in Western Region regarding incidents of actual and/or perceived harassment and/or unusual occurrences reported by Internal Revenue Service personnel whose official duties included assignments to Scientology-related matters. Release of the documents could reasonably be expected to interfere with enforcement proceedings.

The document was compiled for law enforcement purposes and relates, at least at the time of the request, to an open investigation into incidents of actual and/or perceived harassment of IRS employees. Disclosure could reasonably be expected to interfere with enforcement proceedings because disclosure could subject IRS employees to harassment or reprisal and inform the party being investigated of the direction and scope of the IRS investigation. Consequently, the documents are exempt under Exemption 7(A).

### (2) Exemption 7(C)

 Exemption 7(C) permits an agency to withhold documents compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to consti-

17. The IRS also withheld the page or portions thereof pursuant to Exemption 7(C).

tute an unwarranted invasion of personal privacy." The IRS has withheld documents in full or part pursuant to Exemption 7(C) that contain (1) identifying information—including names, addresses and social security numbers—of actual or potential IRS contacts or lower level government employees and (2) handwriting samples of IRS personnel. An Exemption 7(C) analysis requires the Court to balance the individual privacy interests in keeping the information confidential against the public interest in its release. *See, U.S. Dept. of Justice v. Reporters Committee,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Burge v. Eastburn,* 934 F.2d 577, 579–580 (5th Cir.1991). Only the interest of the general public, not the interest of the requester, is relevant. *See, Nadler,* 955 F.2d at 1489. If the individual privacy interests that would suffer if the document was disclosed outweigh the public's interest in disclosure, the document is exempt from disclosure. *See, Reporters Committee,* 489 U.S. at 762, 109 S.Ct. at 1476.

■■■ The first question in an Exemption 7(C) analysis is—What type or kind of document is protected? Exemption 7(C) protects "private" information. Information is "private" if it is " 'intended for or restricted to the use of a particular person or group of persons: not freely available to the public.' " *Id.* (quoting, Webster's Third New International Dictionary 1804 (1976).) Intimate details of an individual's life and " 'information about an individual which he could reasonably assert an option to withhold from the public at large because of its possible adverse effects upon himself or his family' " is "private" information. *Nadler,* 955 F.2d at 1489, (quoting, *L & C Marine Transport, LTD v. United States,* 740 F.2d 919, 923 (11th Cir. 1984), (quoting, Attorney General Levi in his memorandum on the 1974 Amendments to the FOIA, Freedom of Information Act and Amendments of 1974 (P.L. 93–502), Source Book: Legislative History, Texts and Other Documents at 519–20 (Joint Comm.Print 1975))). Even "private" information that has been previously disclosed is "private." *Reporters Committee,* 489 U.S. at 762–767, 109 S.Ct. at 1476–1478; *Burge,* 934 F.2d at 579. Basically, any personal information in the possession of a government agency is "pri-

vate." *See, Reporters Committee,* 489 U.S. at 764–767, 109 S.Ct. at 1477–1478.

■■■ If the information is "private," the next question is—Whether an invasion of that privacy is warranted? This requires the Court to examine the nature of the information and its relationship to the FOIA's basic purpose of opening agency action to public scrutiny.

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the] purpose [of Exemption 7(C) ]. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.

*Id.* 489 U.S. at 773, 109 S.Ct. at 1481. If disclosure does not serve the FOIA's purpose, the public interest does not outweigh the privacy interests and the information is exempt. *See, Id.* 489 U.S. at 773, 109 S.Ct. at 1481; *Nadler,* 955 F.2d at 1490.

■■■ The public interest does not outweigh the privacy interests if disclosure could subject government employees to harassment and annoyance. *See Nix v. United States,* 572 F.2d 998, 1006 (4th Cir. 1978). In *Nix,* the requester sought the documents containing the identities of FBI agents and an Assistant United States Attorney who were involved in an investigation into an alleged civil rights violation of the requester. The potential harassment and annoyance did not threaten the life or physically safety of the individuals. *See, Id.* at 1066 n. 8. The court held that the disclosure of the individuals' identities constituted an unwarranted invasion of their personal privacy and were exempt pursuant to Exemption 7(C).

> One who serves his state of nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and private lives. While the right of privacy to these FBI agents is perhaps minimal, we

find that the public interest in the identification of the FBI agents who conducted the investigation of the alleged civil rights violation of Nix to be even less. For the same reason, the assistant United States Attorney who made the decision that appellant's alleged civil rights violation was without prosecutive merit is also entitled to have his identity remain undisclosed as being an unwarranted invasion of personal privacy under subsection (7)(C).

*Id.* at 1006 (footnote omitted); *See also, Hale v. U.S. Dept. of Justice,* 973 F.2d 894, 902 (10th Cir.1992), *petition for cert. filed,* —— U.S.L.W. —— (U.S. January 28, 1993) (No. 92–7433) (Non-federal law enforcement personnel and non-law enforcement personnel have a substantial privacy interest in protecting their identity.).

▉▉▉ The documents and portions of documents containing government employees' personal information, including names, addresses and social security numbers, are exempt under Exemption 7(C). For example, the IRS withheld pages 749–752 [18] described as:

> Page 749 is a handwritten routing slip dated 11/20/90 from a Service employee to Inspection employees regarding a proposed meeting. The attachments concern potential attendees and other details concerning the proposed meeting. (pages 750–752).
>
> Identities of lower level employees, employee handwriting, matters relating to internal personnel rules and practices of the Service.

The IRS also withheld page 729 [19] described as:

> Page 729 is a handwritten routing slip date 10/9/90 to Inspection employees regarding information received from a confidential source.
>
> Identities of lower level Service employees, employee handwriting, and reference to confidential source.

The justifications for withholding the information is identical:

> The document(s) was/were compiled for law enforcement purposes. Because public identification of this/these individual(s)

could conceivably subject him/her/them to harassment and annoyance in the conduct of official duties and in the employee(s)' private life/lives and because the Internal Revenue Service can discern little or no public interest in this information, the Service determined that release of personal or identifying information could reasonably be expected to constitute an unwarranted invasion of the personal privacy of the lower level government employee(s) whose identity/identities or whose identifying information has been withheld.

The Service is aware that Scientology related entities and/or persons affiliated or believed to be affiliated with Scientology have a practice of aggressively harassing its perceived enemies. This awareness was gained from the writings attributed to Scientology's founder, Scientology scriptures, the court opinions detailing such action, and the incidents of harassment reported in the *Los Angeles Times* series published between June 24, and June 29, 1990, in the *Time* magazine article date May 6, 1991, in other published material, and in the British Broadcasting Company (BBC) program televised April 1989.

Disclosure of the handwriting of Service employee(s) could reasonably be expected to constitute an unwarranted invasion of personal privacy by subjecting the employee(s) to harassment and annoyance in the conduct of official duties and in the employee(s)' private life/lives. Since the Service can discern little or no public interest in the information, the Service determined not to release the handwriting of Service employee(s).

The records were compiled for law enforcement purposes and contain handwriting samples and identities of IRS employees. This is obviously private information. The question is whether public disclosure of this information outweighs the privacy interests involved. First, there is no indication that disclosure of this information will open IRS action to public scrutiny. Thus, disclosure does not serve the FOIA's purpose. Second, although the employees interest in their identities and ad-

---

**18.** The IRS also withheld these pages or portions thereof pursuant to Exemptions 2 and 6.

**19.** The IRS also withheld these pages or portions thereof pursuant to Exemption 7(D).

dresses may be minimal, the public's interest in the disclosure of the information is even less. *See, Nix,* 572 F.2d at 1006. Finally, there is every indication that disclosure of this information could subject the employees to harassment and annoyance in the conduct of their official duties and their private lives. *See,* Declaration of John Fuhrman pages 6–13. Consequently, the public interest does not outweigh the privacy interests and the identities and addresses of lower level employees are exempt.

 However, the records withheld pursuant to Exemption 7(C) because they are in employees' handwriting are not exempt. While the employees may have a privacy interest in their handwriting, that interest does not outweigh the public interest in disclosure of the information contained in the documents. In any event there is a very simple solution that will permit release of the record and protect the employees' privacy interests. Although the FOIA does not contain an express provision requiring an agency to reproduce handwritten documents in a form other than the form in which the agency stores the document to permit disclosure of the portions of the document that are not otherwise exempt, such a requirement is implicit in the FOIA's dominant theme of full agency disclosure, its intent to open agency action to public scrutiny, and its redaction provisions.

This requirement is supported by *May v. Department of Air Force,* 777 F.2d 1012 (5th Cir.1985). May made a request under the Privacy Act, 5 U.S.C. § 552a for evaluation forms that related to him. The Air Force denied the request pursuant to Exemption k(7) of the Privacy Act which exempts evaluation materials from disclosure "to the extent that the disclosure of such materials would reveal the identity of a source who furnished information to the Government...." *See,* 5 U.S.C. § 552a(k)(7). The Air Force withheld the evaluations on the ground that the forms were handwritten and disclosure would reveal the identity of the individual supplying the information. The court rejected this argument and required the Air Force to reproduce the evaluations, to the extent that they were not otherwise subject to being withheld, in typewritten form or in a third persons handwriting.

The Air Force does not dispute that it must release any information in May's Form 705 evaluations that would not reveal the source of that information. Rather, the Air Force argues that in the instant case the release of *any* information from the forms, including the total number of forms, would reveal the source of the information. The Air Force contends that because the handwritten Form 705 recommendations put the raters' identities on every word of the recommendations, Exemption (k)(7) protects against any disclosure of the recommendations. If the information is otherwise subject to disclosure, this concern could be easily remedied by preparing a special copy of the Form 705, or parts thereof, typewritten or in a third-party's handwriting.

*May,* 777 F.2d at 1016. The court remanded the case to the trial court for a determination if any portion of the evaluation forms could be disclosed without disclosing the raters' identities. *See, Id.*

 All information in documents withheld to protect the employees' privacy interests in their handwriting that are not otherwise exempt must be reproduced in a form that protects the employees' privacy interests and disclosed. Although the IRS must reproduce the documents, the Court believes (and the CST agrees) that the CST should bear all costs associated with reproducing the records. *See,* 5 U.S.C. § 552(a)(4).

### (3) Exemption 7(D)

 Pursuant to Exemption 7(D), an agency may withhold records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to disclose the identity of a confidential source ... which furnished information on a confidential basis, and in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." Exemption 7(D) contains two separate and distinct exemptions. The first—"the *identity* of a confidential source ... which furnished informa-

tion on a confidential basis"—exempts the identity of a confidential source. *See,* 5 U.S.C. § 552(b)(7) (emphasis added); *See also, Providence Journal Co. v. U.S. Dept. of Army,* 981 F.2d 552, 566 (1st Cir.1992). The agency may withhold any portion of the document that would reveal the identity of the confidential source. *See, Pope v. United States,* 599 F.2d 1383, 1386 (5th Cir.1979). The second—"in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, *information* furnished by a confidential source"—exempts not only the identity of the confidential source but also the information provided. *See,* 5 U.S.C. § 552(b)(7) (emphasis added); *See also, Providence Journal Co.,* 981 F.2d at 566. The IRS claims the documents withheld pursuant to Exemption 7(D) are exempt under the first exemption and release of any portion of the withheld records would reveal the identity of the confidential source; therefore, the entire document is exempt.

The agency must demonstrate the source provided information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Conf.Rep. No. 1380, 93d Cong., 2d Sess. 13, *reprinted in* 1974 U.S.C.C.A.N. 6267, 6269; *See also, Nadler,* 955 F.2d at 1484. Congress enacted Exemption 7(D) to ensure that the FOIA did not impair federal law enforcement agencies' ability to gather information. *See, Nadler,* 955 F.2d at 1485. It was intended to ensure sources are available to provide information for criminal investigations. *See, Irons v. FBI,* 880 F.2d 1446, 1450–1451 (1st Cir.1989).

 The agency is not required to demonstrate that it expressly assured confidentiality to a confidential source. *See, Pope,* 599 F.2d at 1386; *See also, Nadler,* 955 F.2d at 1486–1487. A court should also find an assurance of confidentiality where it is reasonable to infer such from the circumstances. *See, Pope,* 599 F.2d at 1386, (quoting, H.Conf.Rep. No. 93–1380, 93d Cong., 2d Sess., p. 13, 1974 U.S.C.C.A.N. 6269); *Providence Journal Co.,* 981 F.2d at 563; *See also,*

*Nadler,* 955 F.2d at 1486; *Keys v. Department of Justice,* 830 F.2d 337, 345 (D.C.Cir. 1987). The First and Tenth Circuits assume an assurance of confidence, either express or implied, when an individual gives information to a criminal law enforcement official unless the circumstances indicate otherwise. *See, Providence Journal Co.,* 981 F.2d at 565; *KTVY–TV, A Division of Knight–Ridder Broadcasting, Inc. v. United States,* 919 F.2d 1465, 1470 (10th Cir.1990); *Johnson v. U.S. Dept. of Justice,* 739 F.2d 1514, 1517 (10th Cir.1984). It is irrelevant that the identity of the confidential source is known. *See, Radowich v. U.S. Atty., Dist. of Maryland,* 658 F.2d 957, 960 (4th Cir.1981). Furthermore, the information and/or identity of the individual remains confidential subject to Exemption 7(D) after the investigation is concluded. *See, Pope,* 599 F.2d at 1387; *KTVY–TV,* 919 F.2d at 1471.

 The documents and portions of documents containing the identity and information from confidential sources are *not* exempt under Exemption 7(D). For example, the IRS withheld page 729 [20] described as:

Page 729 is a handwritten routing slip dated 10/9/90 to Inspection employees regarding information received from a confidential source.

Identities of lower level Service employees, employee handwriting, and reference to confidential source.

The IRS justification states:

The withheld document contains information received from a confidential source which was compiled by the Service during the course of its investigation of possible harassment of Service employees. The release of this information could reasonably be expected to reveal the identity of the confidential source.

The record was compiled for law enforcement purposes and contains the identity of a confidential source. However, neither the justification nor the affidavits submitted in this case establish that the confidential informant furnished the information on a confidential basis. Each justification for withholding documents under Exemption 7(D)

---

**20.** The IRS also withheld the page or portions thereof pursuant to Exemption 7(C).

contains the same flaw. Consequently, the IRS improperly withheld the documents under Exemption 7(D) and they must be disclosed unless otherwise exempt.

#### (4) Exemption 7(E)

 Exemption 7(E) permits an agency to withhold records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Exemption 7(E) only applies to techniques, procedures and guidelines generally unknown to the public. *See, Hale,* 973 F.2d at 902. However, even if known by the public to some extent, they are nevertheless exempt "if disclosure of the circumstances of their use could lessen their effectiveness." *Id.* at 902–903.

 The IRS withheld pages 1673–1696 claiming they are exempt under a number of Exemptions. Two of these pages, 1688–1689, it claims are exempt under Exemption 7(E). The IRS describes pages 1676–1696 as:

> Pages 1673–1696 are handwritten notes, reports, messages, and Memorandums of Call dealing with the investigation regarding harassment of Service employees. These items were written by the inspector conducting the investigation, or by other Service personnel during the course of the investigation. These pages contain various dates or are undated.
>
> Identities of lower level Service employees and third parties, employee handwriting, attorney-client communications, third party return information, information provided by a confidential source, and investigative techniques (pages 1688–1689).

The IRS justification states:

> The document(s) was/were compiled for law enforcement purposes. . . .
>
> The release of certain information contained in these law enforcement records would also disclose law enforcement techniques and procedures used in law enforcement investigation, which are not well known to the public.

Although these are law enforcement records compiled for law enforcement purposes the production of which would disclose techniques and procedures used in law enforcement investigations and prosecutions, the IRS has not established that their disclosure could reasonably be expected to circumvent the law. Consequently, these pages are not exempt under Exemption 7(E) and the IRS must release them.

### V. SEGREGABILITY

 The IRS must also disclose "[a]ny reasonably segregable portion of a record ... after deletion of the portions which are exempt." *See,* 5 U.S.C. § 552(b); *See also, Schiller,* 964 F.2d at 1209, (quoting, *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977)) ("By 1977, it had 'long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.' ")). If a document cannot be segregated into exempt and non-exempt portions, the agency must state that it cannot and explain why it cannot. *See, Schiller,* 964 F.2d at 1209–1210. The only statement regarding segregability the IRS made for each withheld document was: "The document cannot be segregated for partial release." It did not explain why the document could not be segregated and released. Without this information the Court is unable to determine *de novo* whether the document can or cannot be segregated. The burden is on the agency to prove the document cannot be segregated for partial release. The IRS has not met its burden and, consequently, must segregate all non-exempt portions and release them.

### VI. CONCLUSION

IT IS ORDERED that the Internal Revenue Service's Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS ORDERED that the Church of Scientology of Texas' Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS ORDERED that the Internal Revenue Service immediately disclose to the Church of Scientology of Texas all documents

or portions thereof containing resource allocation information that the Internal Revenue Service withheld under the authority of Exemption 2 that are not otherwise held exempt by this Order.

IT IS ORDERED that the Internal Revenue Service immediately reproduce all documents containing employee handwriting and disclose all information in those documents that is not otherwise held exempt under this Order.

IT IS ORDERED that the Internal Revenue Service immediately disclose to the Church of Scientology of Texas pages 1688–1689.

IT IS ORDERED that the Internal Revenue Service may withhold all information contained in records that is protected by the attorney-client privilege, attorney work-product and/or deliberative process privilege.

IT IS ORDERED that the Internal Revenue Service may withhold all "tax return information" as that term is defined by 26 U.S.C. § 6103(b)(2).

IT IS ORDERED that the Internal Revenue Service may withhold all information contained in records that identifies "lower level employees" including handwriting, names, addresses and/or social security numbers.

IT IS ORDERED that the Internal Revenue Service may withhold all information withheld pursuant to Exemption 7(A).

IT IS ORDERED that the Internal Revenue Service may withhold all information withheld pursuant to Exemption 6.

IT IS ORDERED that the Internal Revenue may withhold all "financial disclosure statements."

IT IS ORDERED that the Internal Revenue may withhold all information withheld pursuant to Exemption 3 in conjunction with Federal Rule Criminal Procedure 6(e).

IT IS ORDERED that the Internal Revenue Service immediately segregate and disclose to the Church of Scientology of Texas all withheld documents or portions thereof that have not been held exempt by this Order.

IT IS ORDERED that all other pending motions are DISMISSED.