[No. A131111. First Dist., Div. Two. Dec. 20, 2011.]

AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, Respondent;
DEPARTMENT OF CORRECTIONS AND REHABILITATION, Real Party in Interest.

58

## COUNSEL

Michael Temple Risher and Linda Lye for Petitioner.

No appearance for Respondent.

Mennemeier, Glassman & Stroud, Kenneth C. Mennemeier, Kelcie M. Gosling and Margaret Toledo for Real Party in Interest.

## OPINION

**KLINE, P. J.**—This petition for writ of mandamus presents two issues, both arising under the California Public Records Act (Gov. Code, § 6250 et seq.)[1] (PRA): (1) whether California's Department of Corrections and Rehabilitation (CDCR) may withhold the names of the pharmaceutical companies and others from which it sought to acquire a prescription drug used by the state in executing condemned inmates and (2) whether CDCR can delete information from disclosed documents on the ground it is not responsive to petitioner's PRA request. The trial court answered both questions in the affirmative. We shall reverse the rulings.

### FACTS AND PROCEEDINGS BELOW

California executes condemned inmates pursuant to a three-drug lethal injection protocol (Cal. Code Regs., tit. 15, § 3349 et seq.), which replaced a similar protocol previously found flawed by federal and state courts under the

---

[1] All statutory references are to the Government Code unless otherwise indicated.

Eighth Amendment and California's Administrative Procedure Act (Gov. Code, § 11340 et seq.). (*Morales v. Tilton* (N.D.Cal. 2006) 465 F.Supp.2d 972; *Morales v. California Dept. of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 729 [85 Cal.Rptr.3d 724].) The first drug injected under the new protocol, sodium thiopental, is a barbiturate sedative intended to render the inmate unconscious and anesthetize him from the pain resulting from the two subsequently injected drugs, pancuroniam bromide, a neuromuscular blocking agent that induces paralysis, and potassium chloride, which causes cardiac arrest. (*Morales v. Tilton*, at p. 975.)

Shortly before the effective date of the new protocol, September 29, 2010, a death row inmate scheduled to be executed on that date intervened in a federal proceeding challenging the new protocol and sought a stay of execution. The district court issued a conditional stay order directing the inmate to make an election whether to be executed by the three-drug protocol or by injection of sodium thiopental only. The inmate declined to make the election and instead filed a motion in the Ninth Circuit to stay execution. (*Morales v. Cate* (9th Cir. 2010) 623 F.3d 828.) In the course of explaining why the district court's unilateral decision to provide the inmate the one-drug option was "improper," the Ninth Circuit observed that there was a dispute whether the state has a sufficient supply of sodium thiopental to implement the one-drug option, and that the state had advised the court "that its current supply of sodium thiopental has an expiration date of October 1, 2010." (*Id.* at p. 831.)

On October 7, 2010, after petitioner learned that CDCR had obtained a new supply of sodium thiopental, it sent the department a PRA request for documents and other materials pertaining to its acquisition and use of the drug, including documents indicating "how much the state paid for the newly acquired sodium thiopental, how payment was made and from what account," from whom the department most recently acquired the drug, "[a]ll communications, internal or external, regarding efforts by CDCR to obtain sodium thiopental between August 1, 2010, and today," and "[a]ll documents relating to attempts by the CDCR to acquire sodium thiopental, successful or unsuccessful," during that period.

CDCR responded that the PRA request would be "partially denied," explaining that some of the requested materials were "protected by the attorney-client privilege, attorney work product, or were specifically prepared for CDCR's use in pending litigation" and therefore exempt from disclosure pursuant to specified provisions of the PRA and other statutes, or "would impose an unwarranted invasion of personal privacy, personnel records, or records deemed 'protected information' " by a federal protective order. Citing *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325 [283 Cal.Rptr. 893,

813 P.2d 240] (*Times Mirror*), CDCR also stated in the letter that it would not provide "records protected by the deliberative process privilege," explaining that the PRA "allows CDCR to withhold information if nondisclosure of the records requested would outweigh the public interest in releasing the documents." According to CDCR, "[r]eleasing records that would expose CDCR's decision making process would discourage candid discussion, and thereby undermine the agency's ability to perform its functions."

Though CDCR's statement that the PRA request would be "partially denied" implied some disclosure would be made, the letter provided no documents or other materials nor indicated whether and when any would be provided. Petitioner therefore commenced a writ proceeding in the San Francisco Superior Court on November 17, 2010. On November 30, after a hearing, the trial court directed CDCR to produce all records requested by petitioner "other than those records [the CDCR] in good faith believes may lawfully be withheld under the PRA." CDCR was also directed to provide petitioner with a list of all withheld documents and an explanation why it believed such documents exempt from disclosure.

On December 10, 2010, in response to the order to produce, CDCR sent petitioner's counsel a "PRA Log" listing 1,121 documents, many of which had been withheld or redacted, and indicating which of nine possible reasons explained why a particular document had been withheld or redacted. (See discussion, *post*, at pp. 83–84.) CDCR disclosed approximately 980 pages of documents. Roughly 200 of these pages consisted solely of documents published by the federal government, including three copies of the Drug Enforcement Administrations Practitioner's Manual and blank forms relating to federal drug laws. Of the 780 remaining pages, all but 115 pages were redacted, some quite heavily. CDCR withheld approximately 120 documents, which fell into one or more of five categories: "confidential attorney-client communications or attorney work product, and records relating to pending litigation"; "communications with [the] Governor or his staff"; "other documents reflecting [a] deliberative process"; "employee names, [e-mail] addresses and titles"; and "records identifying pharmaceutical companies, other potential sources of sodium thiopental, and their employees."

On February 1, 2011, the court issued an order authorizing CDCR to withhold three categories of information: (1) "the names of pharmaceutical companies and other businesses and individuals, and the names of these companies' employees, the CDCR contacted in connection with its efforts to obtain sodium thiopental"; (2) "the names of CDCR and other California state employees who were not decisionmakers in CDCR's efforts to obtain sodium thiopental"; and (3) "the names of the members of the execution team, including the physician(s) on this team." The only one of the three

categories challenged by the petition for writ of mandate filed in this court on February 7, 2011, is the first, and only insofar as it pertains to disclosure of the names of pharmaceutical companies and other businesses and individuals CDCR contacted in order to acquire sodium thiopental. The petition does not contest the rulings that CDCR may withhold the names of employees of the pharmaceutical companies and others it contacted in order to acquire sodium thiopental, the names of state employees who lacked decisionmaking authority, and the names of the execution team, and we therefore do not address those rulings. The effect of the challenged rulings was to allow CDCR to withhold the identities of approximately 12 pharmaceutical distributors and other entities from which it sought to obtain sodium thiopental.

The order did not allow CDCR to withhold internal governmental communications under section 6254, subdivision (*l*), the Governor's correspondence exception to disclosure, because, as stated in *California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 168 [78 Cal.Rptr.2d 847], that exception is "intended to protect communications to the Governor and members of the Governor's staff from correspondents outside of government" and was therefore inapplicable to the documents petitioner sought.

The order also declared that "[w]hether CDCR may lawfully redact particular documents as 'non-responsive' will depend on a review of those documents to determine whether they are responsive to the [petitioner's] PRA request. The court will conduct an in camera review of documents or excerpts of documents that CDCR has withheld on the basis that they are non-responsive to the [petitioner's] PRA request."

After conducting in camera review, the court determined which of the information CDCR had redacted from documents could be withheld and which had to be produced. Two of the challenged redactions approved by the court deleted information from e-mails between CDCR employees solely on the ground that the deleted information was "not responsive" to petitioner's PRA request.

Finally, the order addressed the fact that CDCR had inadvertently failed to redact one disclosure of the name of a British pharmaceutical broker it had contacted to arrange for the acquisition of sodium thiopental. Petitioner claimed that although CDCR provided the information unintentionally, petitioner obtained it lawfully and therefore had a right to publish it under the First Amendment. Because it suspected CDCR's omission was unintentional, and "out of an abundance of caution," petitioner itself redacted this information from the documents it posted on its Web site pending judicial resolution of its claim. The trial court rejected petitioner's argument, stating in its order that "CDCR may 'take back' information about the identity of the pharmaceutical

distributor that CDCR inadvertently provided on December 7, 2010, which [petitioner] redacted before making the documents public on its website."

The petition before us seeks an order directing respondent superior court to enter an order requiring CDCR to produce (1) information concerning actual or potential sources of sodium thiopental, and (2) unredacted versions of documents that were produced but redacted on the grounds that the deleted information was "not responsive" to petitioner's PRA request, and directing respondent court to vacate its order that CDCR may "take back" information about the identity of the pharmaceutical distributor that CDCR inadvertently provided in December 2010.

## STANDARD OF REVIEW

Our review of a trial court's rulings on questions arising under the PRA or the First Amendment is de novo; the trial court's factual determinations will be upheld if supported by substantial evidence. (*Times Mirror, supra*, 53 Cal.3d 1325, 1336; *San Jose Mercury News, Inc. v. Criminal Grand Jury* (2004) 122 Cal.App.4th 410, 415 [18 Cal.Rptr.3d 645]; *CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906 [110 Cal.Rptr.2d 889].) As the petition before us is for writ of mandamus, the evidence we consider is only that submitted to the trial court. (*Campbell v. Superior Court* (2008) 159 Cal.App.4th 635, 647 [71 Cal.Rptr.3d 594].)

In analyzing the availability of any exemption from disclosure available under the PRA, "we accept the trial court's express and implied factual determinations if supported by the record, but we undertake the weighing process anew. (*Connell v. Superior Court* [(1997)] 56 Cal.App.4th [601,] 612 [65 Cal.Rptr.2d 738].) As our high court has explained, 'although a reviewing court should weigh the competing public interest factors de novo, it should accept as true the trial court's findings of the "facts of the particular case" [citation], *assuming those findings are supported by substantial evidence.*' (*Michaelis, Montanari & Johnson v. Superior Court* [(2006)] 38 Cal.4th [1065,] 1072 [44 Cal.Rptr.3d 663, 136 P.3d 194].)" (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1323 [89 Cal.Rptr.3d 374], italics added.)

█ Endorsing the proposition "that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state" (§ 6250), the Legislature enacted the PRA " 'for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies.' [Citation.] Legislative policy favors disclosure. [Citation.] 'All public records are subject to disclosure unless the Public Records Act expressly provides otherwise.'

[Citation.]" (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at pp. 1319–1320; accord, *Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377].)[2]

"Despite the strong legislative policy favoring access, 'the public's right to disclosure of public records is not absolute. In California, the Act includes two exceptions to the general policy of disclosure of public records: (1) materials expressly exempt from disclosure pursuant to section 6254; and (2) the "catchall exception" of section 6255, which allows a government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly outweighs the public interest served by disclosure.' (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1017 [88 Cal.Rptr.2d 552], fns. omitted.) But 'unless exempted, all public records may be examined by any member of the public, often the press, but conceivably any person with no greater interest than idle curiosity.' (*Marylander v. Superior Court* (2000) 81 Cal.App.4th 1119, 1125 [97 Cal.Rptr.2d 439].)" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1408 [44 Cal.Rptr.3d 128].) "Since disclosure is favored, all exemptions are narrowly construed. [Citations.] The agency opposing disclosure bears the burden of proving that an exemption applies. [Citation.]" (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at p. 1321.)

## I.

### CDCR May Not Withhold the Names of Pharmaceutical Companies and Others from Which It Sought to Obtain Sodium Thiopental

█ CDCR justified withholding the names of the entities from which it tried to obtain sodium thiopental on the basis of two exemptions. The first is that set forth in subdivision (k) of section 6254,[3] which is not an independent

---

[2] This policy of transparency was endorsed by California voters in 2004 when they approved Proposition 59, which amended the state Constitution by specifically acknowledging therein the "right of access to information concerning the conduct of the people's business," and providing that "the writings of public agencies and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).) The amendment required the PRA to "be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access" (Cal. Const., art. I, § 3, subd. (b)(2)) though, as has been noted, that rule of construction was applied prior to the amendment. (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750–751 [49 Cal.Rptr.3d 519], citing *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 831 [108 Cal.Rptr.2d 870].)

[3] Subdivisions (a) through (d) of section 6254 list 29 categories of materials exempt from disclosure. "These exemptions are permissive, not mandatory. The Act endows the agency with

exemption but incorporates exemptions "prohibited pursuant to federal or state law," specifically including "provisions of the Evidence Code relating to privilege." The provision of the Evidence Code relied upon by CDCR is the conditional privilege for confidential official information provided in Evidence Code section 1040, which grants a public entity a privilege to refuse to disclose "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (Evid. Code, § 1040, subd. (a).) A public entity has the privilege to refuse to disclose such information under Evidence Code section 1040 only if disclosure is forbidden by a state or federal statute or, as CDCR contends and the trial court agreed is here the case, disclosure "is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered." (Evid. Code, § 1040, subd. (b)(1).)

■ CDCR also relies upon the "catch-all exception" of section 6255, claiming it demonstrated that, on the facts of this case, the public interest served by not disclosing the records and other information withheld "clearly outweighs the public interest served by disclosure" (*id.*, subd. (a)) of those materials. "This catchall exemption 'contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality.' [Citation.] 'Where the public interest in disclosure of the records is not outweighed by the public interest in nondisclosure, courts will direct the government to disclose the requested information.' [Citation.]" (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at p. 1321.)

Both of the exceptions to disclosure relied upon by CDCR impose on California courts a duty to weigh the costs and benefits of disclosure in each particular case, a duty that has no counterpart under the federal Freedom of Information Act (5 U.S.C. § 552) (FOIA), upon which the PRA was in other respects modeled.[4] (*American Civil Liberties Union Foundation v.*

discretionary authority to override the statutory exceptions when a dominating public interest favors disclosure." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652 [230 Cal.Rptr. 362, 725 P.2d 470] (*Block*).) A footnote to this sentence adds that "[t]he penultimate sentence of section 6254 states: 'Nothing in this section is to be construed as preventing any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is prohibited by law.' [Citation.] [¶] In addition, section 6253.1 provides in pertinent part that 'a state or local agency may adopt requirements for itself which allow greater access to records . . . .' " (*Id.* at fn. 7.)

[4] As stated by the Fourth Circuit, there is no basis for the balancing of equities in the application of the FOIA; "indeed, the very language of the Act seems to preclude its exercise."

*Deukmejian* (1982) 32 Cal.3d 440, 447, 452 [186 Cal.Rptr. 235, 651 P.2d 822].) Because "[t]he weighing process mandated by Evidence Code section 1040 requires review of the same elements that must be considered under section 6255 . . . [,] rejection of the claim of exemption under section 6255 on the ground that the public interest weighs in favor of disclosure similarly requires rejection of the claims of exemption under section 6254, subdivision (k) and Evidence Code section 1040." (*Block, supra*, 42 Cal.3d at p. 656, citing *American Civil Liberties Union Foundation v. Deukmejian*, at pp. 446–447, fn. 6.)

The trial court concluded that the public interest was better served by withholding or redacting the information at issue. The chief provision of the February 1, 2011 order, which was drafted by CDCR, states that withholding "the names of pharmaceutical companies and other businesses and individuals . . . that CDCR contacted in connection with its efforts to obtain sodium thiopental . . . is warranted to protect privacy and security interests for the reasons identified in CDCR's supplemental brief."

█ Stressing that the PRA was designed to ensure public access to information about the manner in which the government conducts its business, petitioner argues that disclosing the identities of the pharmaceutical companies and others from whom CDCR attempted to obtain sodium thiopental sheds light on the People's business primarily because it will assist in the detection of favoritism and fraud with respect to the use of state funds, and permit the public to determine whether the company retained by CDCR to import the drug from the United Kingdom had the required federal license.[5] The identities of those who do or seek to do business with or are licensed by the state is ordinarily subject to disclosure (see, e.g., *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 335–337 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*Local 21, AFL-CIO*); *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 300, fn. 10 [64 Cal.Rptr.3d 661, 165 P.3d 462]; *California State University, Fresno Assn., Inc. v. Superior Court, supra*, 90 Cal.App.4th 810, 833), and such disclosure is sometimes mandated by statute (see, e.g., Pub. Contract Code, § 10305, regarding competitive bids for public projects).

(*Robles v. Environmental Protection Agency* (4th Cir. 1973) 484 F.2d 843, 847; see 1 O'Reilly, Federal Information Disclosure (3d ed. 2000) § 9:4, pp. 334–335.)

[5] Petitioner was interested in this issue because federal agents had recently seized the State of Georgia's supply of sodium thiopental after learning that, in violation of the federal Controlled Substances Act (21 U.S.C. § 801 et seq.), the Georgia Department of Corrections appeared to be importing the drug from Britain without a federal license to import controlled substances. (Sack, *Executions in Doubt in Fallout Over Drug*, N.Y. Times (Mar. 16, 2011) p. A20.)

CDCR does not quarrel with the principle that the public's right to information concerning the manner in which the government conducts its business sometimes requires disclosure of the identities of those with whom it does business; CDCR's argument is that the public learned every salient fact about California's efforts to acquire sodium thiopental during the specified time period from the information petitioner was provided, which included the facts that it obtained supplies of the drug from the State of Arizona and a named British manufacturer, the terms of those transactions, as well as the terms of proposed transactions with other suppliers that did not pan out. Petitioner answers that no final contract or the terms thereof was ever produced, and none of the documents CDCR disclosed revealed the amount paid by CDCR for the supply of sodium thiopental it eventually obtained. Petitioner also points out that even if, as was not the case, all of the terms of the actual and proposed transactions had been disclosed, the public would still have an interest in learning the identity of the suppliers in order to assess whether they had any financial or other ties to decision makers at CDCR. (See § 87100, prohibiting government officials from participating in making or in any way attempting "to use [their] official position to influence a governmental decision in which [they] knows or has reason to know [they have] a financial interest.")

With regard to the public interest served by *withholding* the identities of the pharmaceutical companies and others from whom CDCR obtained or attempted to obtain sodium thiopental, CDCR repeatedly emphasizes that the state's effort to obtain sodium thiopental was a subject of " 'impassioned debate,' " and suggested that, by releasing the information CDCR voluntarily produced to news organizations, "giving multiple press interviews, and posting all of the records on its website," petitioner was dangerously fanning the flames. As it pointed out in its trial brief, "there are extremists on both side[s] of the death penalty debate who pose a real threat to the personal safety of those involved in the process." Although CDCR made these points primarily in support of its argument that the names of certain government employees and persons employed by pharmaceutical companies should not be disclosed, a matter not here at issue, the " 'impassioned' " nature of the death penalty debate clearly colored the trial court's attitude about the consequences of disclosure of the identities of the pharmaceutical companies and others from whom CDCR sought to obtain sodium thiopental. For example, at the hearing, in the course of explaining why it concluded "that the interests in preserving the identities of these companies outweighs the public's interest in needing to know the identities," the court stated as follows: "What we are dealing with in my opinion is a highly heated issue, one that causes great concern. And I think that not only is there a safety problem potential, there is a potential problem with boycott and business interests. I think it goes beyond

privacy interests. There really are no privacy interests in this situation,[6] but I don't think that the identity of these companies should be disclosed."

The passionate nature of the death penalty debate also influenced the court's determination that CDCR may "take back" information revealing the identity of the "pharmaceutical distributor" that CDCR inadvertently provided and petitioner voluntarily redacted from the information it posted on its Web site. In urging the court to issue that ruling, CDCR's counsel reemphasized that "people have very passionate views on one side or another" of the death penalty debate, and reminded the court of its earlier offer to "show the Court in camera the threat that has been made against one pharmaceutical company, and our interest [in] making sure that that doesn't happen again."

We agree that "[f]ew issues in American society have generated as much impassioned debate as the death penalty. At one end of the spectrum, abolitionists condemn the intentional taking of human life by the State as barbaric and profoundly immoral. At the other, proponents see death, even a painful death, as the only just punishment for crimes that inflict unimaginable suffering on victims and their surviving loved ones. Even among those with less absolute positions, there are vigorous arguments about the social, penological, and economic costs and benefits of capital punishment." (*Morales v. Tilton, supra*, 465 F.Supp.2d at p. 973.) However, the passionate nature of the death penalty debate, which *heightens* public interest in the information at issue in this case, justifies nondisclosure *only* to the extent it may show that disclosure of that information would pose a potential security threat of some sort to any of the pharmaceutical companies or other entities from which CDCR sought to obtain sodium thiopental.

■ Thus we are brought to the dispositive issue in this case. Accepting, as we do, that a court may consider *potential* threats to security when weighing the public interest in withholding information against that supporting disclosure (see, e.g., *Times Mirror, supra*, 53 Cal.3d at p. 1346; *Connell v. Superior Court, supra*, 56 Cal.App.4th at p. 612), the question is the nature of evidence of such a threat that may be used to find a public interest in withholding information.

As previously noted, while we weigh the competing public interest factors independently, we must defer to the trial court's findings of the pertinent facts where those findings are supported by substantial evidence. (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at p. 1323, citing *Michaelis,*

---

[6] This statement is inconsistent with the statement in the February 1, 2011 order that the withholding of the names of the pharmaceutical companies and others CDCR contacted "is warranted to protect *privacy* and security interests identified in CDCR's supplemental brief." (Italics added.)

*Montanari & Johnson v. Superior Court, supra,* 38 Cal.4th at p. 1072.) Here, to the questionable extent that the trial court's order purports to be based upon findings of fact, they are clearly not supported by substantial evidence.

Our Supreme Court has on several occasions usefully described the type of evidence that suffices to establish a potential threat to security warranting an exemption from disclosure under the PRA. In *Commission on Peace Officer Standards & Training v. Superior Court, supra,* 42 Cal.4th 278, a newspaper sought to compel release by the commission of the names and certain employment data pertaining to peace officers throughout the state. The commission resisted disclosure, arguing "that in light of the 'dangerous and demanding work' performed by peace officers, releasing such information to the public creates a 'potential for mischief.'" (*Id.* at p. 301.) The Supreme Court disagreed: "The safety of peace officers and their families is most certainly a legitimate concern," the court stated, "but the Commission's contention that peace officers in general would be threatened by the release of the information in question is *purely speculative. 'A mere assertion of possible endangerment' is insufficient to justify nondisclosure.* [Citations.] The Commission has not offered any persuasive illustration of how disclosure of the innocuous information at issue could 'create mischief' for peace officers in general." (*Id.* at p. 302, italics added, fn. omitted.) In reaching this conclusion, the court relied upon *Block, supra,* 42 Cal.3d 646, and *Times Mirror, supra,* 53 Cal.3d 1325.

The question in *Block, supra,* 42 Cal.3d 646, was whether the press and public were prohibited under the PRA from obtaining from the Los Angeles County Sheriff information contained in applications for and licenses to possess a concealed weapon. Relying on both section 1040 of the Evidence Code (via subd. (k) of Gov. Code, § 6254) and the "catch-all" exception of section 6255, the sheriff refused to release this information to a television and broadcasting company, arguing that disclosure "will allow would-be attackers to more carefully plan their crime against licensees and will deter those who need a license from making an application." (*Block,* at p. 652.) The Supreme Court rejected the argument, pointing out, as reiterated in *Commission on Peace Officer Standards & Training v. Superior Court, supra,* 42 Cal.4th 278, that the "concern that the release of the information to the press would increase the vulnerability of licensees is conjectural at best. . . . A mere assertion of possible endangerment does not 'clearly outweigh' the public interest in access to these records." (*Block,* at p. 652, fn. omitted.) Furthermore, the court noted, "there is a clear and legislatively articulated justification for disclosure—the right of the public and press to review the government's conduct of its business. Public inspection of the names of license holders and the reasons the licenses were requested enables the press and the public to ensure that public officials are acting properly in issuing licenses for legitimate reasons." (*Block,* at p. 654.) Because "[t]he weighing

process mandated by Evidence Code section 1040 requires review of the same elements that must be considered under section 6255," the *Block* court's rejection of the claim of exemption under section 6255 required it to also reject the claims of exemption under section 6254, subdivision (k), and Evidence Code section 1040. (*Block*, at p. 656.)

*Times Mirror, supra,* 53 Cal.3d 1325, illustrates the quality of evidence of a threat to security that justifies exemption from disclosure under the weighing process prescribed by section 6255. In *Times Mirror*, a newspaper requested disclosure of the Governor's appointment schedules and calendars under the PRA. The Supreme Court held that no identifiable public interest supported such a wholesale production of documents under section 6255. One of the bases upon which the court reached this conclusion was the evidence relating to the potential threat to the Governor's physical security disclosure would present. As the court noted, "the Governor's daily and weekly schedules set forth in exhaustive detail the particulars of the Governor's meetings and travel: time and location of arrivals and departures; traveling companions; hotel accommodations; and ground transportation. The revelation of such information, the Governor's security director reasonably asserts, 'would seriously impair [his] . . . ability to assure the Governor's security, and would constitute a potential threat to the Governor's safety, because the information . . . will enable the reader to know in advance and with relative precision when and where the Governor may be found, those persons who will be with him, and when he will be alone.' Confining disclosure to outdated calendars and schedules might mitigate but would not altogether eliminate the threat; it is plausible to believe that an individual intent on doing harm could use such information to discern activity patterns of the Governor and identify areas of particular vulnerability." (*Times Mirror*, at p. 1346.)

No comparable evidence of potential threat was presented by CDCR or may be found in the record.

The trial court, in its February 1, 2011 order, did not independently state the findings of fact upon which its rulings were based, as would have been the better course, but instead incorporated by reference the "reasons" for each ruling offered by CDCR in a supplemental trial brief. Thus, for example, the order states that withholding the names of pharmaceutical companies and others CDCR contacted in its efforts to obtain sodium thiopental "is warranted to protect the privacy and security interests *for the reasons identified in CDCR's supplemental brief."* (Italics added.) But insofar as it relates to the disclosure of the names of pharmaceutical companies, CDCR's short supplemental trial brief contains little more than legal arguments relating to the deliberative process privilege and the conditional privilege for confidential official information. All else the brief adds is the assertion that "the State has

an interest in maintaining the confidentiality of information regarding the intermediaries, which have asked that their names be kept confidential, and other pharmaceutical companies . . . . CDCR obtained the names of several of those companies from the federal Drug Enforcement Administration, which provided that information in confidence," and these companies have privacy and security interests that CDCR is required to protect. However, CDCR offered no documentary or testimonial *evidence* that any pharmaceutical company or intermediary could or did require its name to be kept confidential, or that the Drug Enforcement Agency required that this information not be disclosed, or explained the nature of the threat that might be averted by withholding the information.[7] As CDCR offered no evidence of any potential threat to the security of any pharmaceutical company or an employee of such a company, or potential invasion of privacy,[8] the record provides no basis upon which to exempt the information at issue under subdivision (k) of section 6254 or the catch-all exception of section 6255.

The only mention in CDCR's trial brief of any evidence of a threat to security is the statement that, "[*i*]*f the Court wishes*, CDCR will provide the court with in camera review of documentation showing threats made to one pharmaceutical company due to its role in the sodium thiopental controversy." (Italics added.) CDCR now faults the trial court and petitioner for not "having sought to view" the "documentation" it offered to but did not submit to the trial court and now offers to submit for our in camera review. Because the agency opposing disclosure bears the burden of proving that an exemption applies, the fault must be placed upon CDCR, not the court or petitioner. Further, as the evidence we consider in reviewing a petition for writ of mandate and/or prohibition excludes evidence not submitted to the trial court (*Campbell v. Superior Court, supra*, 159 Cal.App.4th at p. 647), we cannot receive the "documentation" CDCR belatedly proffers.

---

[7] The only evidence CDCR offered to justify withholding information on the basis of confidentiality was a federal protective order dated April 3, 2006, issued by United States District Judge Jeremy Fogel in *Morales v. Woodford* (N.D.Cal., No. C 06 219 JF RS), which prohibits public disclosure of information identifying any member of the execution team.

[8] CDCR's invasion of privacy argument applies not just to employees of pharmaceutical companies but to the companies themselves. Despite the facts that corporations lack standing to assert the state constitutional right to privacy (*Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 790–793 [195 Cal.Rptr. 393]), the PRA refers to "the right of *individuals* to privacy" (§ 6250, italics added) and exempts records that invade "*personal* privacy" (§ 6254, subd. (c), italics added), and corporations do not have "personal privacy" rights under the federal FOIA (*FCC v. AT&T Inc.* (2011) 562 U.S. ___, ___ [179 L.Ed.2d 799, 131 S.Ct. 1177, 1185]), CDCR does not bother to explain the applicability of PRA protections of privacy to corporations. Moreover, the right of personal privacy, which the PRA unquestionably protects, does not, without more, bar disclosure of the names of individuals that transact business with the state. (See, e.g., *California State University, Fresno Assn., Inc. v. Superior Court, supra*, 90 Cal.App.4th 810.)

CDCR alternatively maintains that "the trial court did not need to see such documentation" to conclude that there is a compelling public interest in protecting pharmaceutical companies from unspecified threats to their "privacy and security interests" that outweighs the public interest in learning the names of companies contacted by CDCR in its search for sodium thiopental. This view ignores not just CDCR's burden of proof, but also the settled view that the threat to security that justifies disclosure cannot be conjectural or speculative. As noted, California courts have repeatedly said that "[a] mere assertion of possible endangerment does not 'clearly outweigh' the public interest" in disclosure. (*Block, supra*, 42 Cal.3d 646, 652; accord, *Commission on Peace Officer Standards & Training v. Superior Court, supra*, 42 Cal.4th 278, 302; *Connell v. Superior Court, supra*, 56 Cal.App.4th 601, 612–613; *California State University, Fresno Assn., Inc. v. Superior Court, supra*, 90 Cal.App.4th 810, 835; *New York Times Co. v. Superior Court* (1990) 218 Cal.App.3d 1579, 1585 [268 Cal.Rptr. 21].) Like the reasons offered to justify withholding information in the cases just cited, those given by CDCR to justify withholding the information at issue in this case, and relied upon by the trial court, have no basis in record evidence and "constitute nothing more than speculative, self-serving opinions designed to preclude the dissemination of information." (*California State University, Fresno Assn., Inc. v. Superior Court*, at p. 835.)

██ CDCR also did not provide any evidence in support of its contention that the information sought by petitioner is protected by the "deliberative process privilege" that may be applied in the weighing process specified by section 6255. That privilege protects "mental processes by which a given decision was reached" and "the substance of conversations, discussions, debates, deliberations and like materials reflecting advice, opinions, and recommendations by which government policy is processed and formulated." (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 540 [85 Cal.Rptr.2d 257, 976 P.2d 808].) In applying the privilege, "[t]he key question in every case is 'whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.' [Citation.] Even if the content of a document is purely factual, it is nonetheless exempt from public scrutiny if it is 'actually . . . related to the process by which policies are formulated' [citation] or 'inextricably intertwined with 'policy-making processes.' [Citations.]" (*Times Mirror, supra*, 53 Cal.3d at p. 1342.)

Neither the record nor CDCR's briefs explain how revelation of the names of the pharmaceutical companies and others from whom CDCR sought to acquire sodium thiopental would disclose the mental processes of any government employee or the substance of deliberations relating to the formulation of any government policy, or undermine CDCR's ability to

perform its functions. The explanation in CDCR's trial brief, which satisfied the trial court, is the following: "CDCR has withheld or redacted approximately fifteen documents based on the deliberative process. Because these documents reflect the government's decision-making process, they are exempt from disclosure." This pronouncement is manifestly inadequate. The deliberative process privilege does not justify nondisclosure of a document merely because it was the product of an agency's decisionmaking process; if that were the case, the PRA would not require much of government agencies. The privilege does not come into play in this case because CDCR has failed to show that its attempts to purchase sodium thiopental involved the formulation of policy, or how disclosure of the names of those contacted during this enterprise would compromise the ability of a CDCR decision maker " 'to test ideas and debate policy and personalities uninhibited by the danger that his tentative but rejected thoughts will become subjects of public discussion' " (*Times Mirror, supra*, 53 Cal.3d at p. 1341), or discourage internal policy debate, or otherwise undermine CDCR's ability to perform its functions. CDCR's effort to obtain sodium thiopental was not the formulation of policy, but merely *implementation* of the policy established by its lethal injection protocol, which was promulgated pursuant to a public process.[9]

 Under the FOIA, "[f]or materials to be exempt from disclosure under the deliberative process privilege, the agency must show that its decision is both (1) predecisional and (2) deliberative. [Citation.] 'A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," rather than to support a decision already made.' [Citation.] Accordingly, the decision must be '[a]ntecedent to the adoption of the agency policy.' [Citation.] However, a document cannot be properly be characterized as predecisional 'if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.' [Citation.]" (*Wilderness Society v. U.S. Dept. of the Interior* (D.D.C. 2004) 344 F.Supp.2d 1, 10–11.) As in *Fox News Network, LLC v. U.S. Department of the Treasury* (S.D.N.Y. 2010) 739 F.Supp.2d 515, the information sought to be withheld—i.e., the names of entities from which CDCR tried to obtain sodium thiopental—"is neither predecisional (because there is no substantive policy decision), nor deliberative (because it answers a factual question). It therefore must be released in full." (*Id.* at p. 547.)

Nor is there any basis for another factor improperly taken into account by the trial court. At the January 10, 2011 hearing, the court stated "that not only is there a safety problem potential, there is a potential problem with boycott

---

[9] It bears noting that, unlike the government agency in *Michaelis, Montanari & Johnson v. Superior Court, supra*, 38 Cal.4th 1065, CDCR does not argue that nondisclosure of proposed contract terms or any other information was necessary to protect the integrity of the negotiation process.

and business interests" and this also justified withholding the identities of the pharmaceutical companies. The idea that suppliers of sodium thiopental might be "boycotted" if their identities were made public was initially raised at the hearing by counsel for petitioner, not by CDCR. While arguing that the names of the pharmaceutical companies should be disclosed, petitioner's counsel stated that this case is not "about national security matters where we have weapons contractors, but, of course, everybody knows who the weapons contractors are. And, in fact, some people choose not to do business with companies that are supplying the government with weapons or other materials that they think go against their personal philosophies, and I think that's democracy in action. [¶] As I understand it, the CDCR's argument for not revealing the names of the pharmaceutical companies is that, well people then might take action like boycotting those companies. Again I think that's democracy in action. Part of the civil rights movement was boycotting companies . . . ."

CDCR's counsel immediately objected to petitioner's counsel's character-ization of its position, making clear CDCR was not concerned about an economic boycott. "The concern here," she said, "is not that potential customers are going to boycott these companies. The concern is that these companies and their staff could be subjected to threats, to their security and safety due to . . . their identities being disclosed for all the world to see." At that point, counsel reiterated the statement in CDCR's brief that "we do have one threat against a company that was made that I can show the Court and opposing counsel in camera if you wish."

The trial court's statement that "there is a potential problem with boycott and business interests," which was expressed just a few moments after CDCR explicitly disassociated itself from that idea, must be seen as a rejection of CDCR's view. The ruling is therefore not just unsupported by any evidence but based, at least in part, on a judicially perceived threat not credited by CDCR.

■ As the record contains no evidence that disclosure of the names of pharmaceutical companies and others from whom CDCR sought to obtain sodium thiopental would threaten "privacy and security interests," nor a basis in fact or law upon which to apply either the conditional privilege for confidential information set forth in Evidence Code section 1040, or the "deliberative process privilege," which the trial court considered in the weighing process mandated by sections 6254 and 6255, the trial court's conclusion that the public interest favoring withholding of the information sought by petitioner outweighs that favoring disclosure cannot be sustained. Weighing the competing considerations independently, and cognizant of CDCR's failure to present any competent evidence in support of nondisclo-sure, we conclude that the public interest served by revealing the names of

the pharmaceutical companies and others from whom CDCR sought to obtain sodium thiopental clearly outweighs that favoring nondisclosure.

The only remaining issue we need address is whether, as the trial court ruled, CDCR may redact portions of documents it discloses that are "non-responsive" to petitioner's PRA request.[10]

## II.

### Redactions from Disclosed Documents of Information Assertedly "Nonresponsive" to Petitioner's PRA Request Were Erroneously Approved Because CDCR Failed to Establish That the Information Was "Nonresponsive"

As earlier noted, the trial court ruled that CDCR redactions of portions of online dialog from two e-mails between CDCR employees was justified because the deleted information was "not responsive" to petitioner's PRA request. Petitioner maintains information cannot be deleted from a disclosed document on that ground.

According to petitioner, the plain language of the PRA requires production of public records except to the limited extent that portions thereof fall within at least one of the exemptions enumerated in the PRA, so that CDCR must produce the entire record, not merely the portion of the record it deems responsive to the request. This argument rests upon subdivision (a) of section 6253, which provides that "every person has a right to inspect any public record, except as hereafter provided. Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record *after deletion of the portions that are exempted by law*." (Italics added.) Petitioner also relies upon *Local 211, AFL-CIO, supra*, 42 Cal.4th 319, in which, citing the foregoing statute and also the definition of "public records" set forth in section 6252, subdivision (e), our Supreme Court stated that "[*u*]*nless one of the exceptions stated in the Act applies*, the public is entitled to access to 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency.'" (42 Cal.4th at p. 329, italics added.)

CDCR initially relied upon several federal judicial interpretations of the FOIA (5 U.S.C. § 552 et seq.), assertedly standing for the proposition that

---

[10] Our conclusion that the public interest warrants disclosure of the names of pharmaceutical companies and others CDCR contacted in order to obtain sodium thiopental renders it unnecessary for us to address petitioner's constitutional claim that allowing CDCR to "take back" the identity of the pharmaceutical distributor it inadvertently provided is a prior restraint on speech; i.e., a "gag order" violative of the First Amendment of the United States Constitution and article I, section 2, of the California Constitution.

nonresponsive information may be redacted from a disclosed document even if the redacted information is not exempt from disclosure under the FOIA. Noting that federal judicial interpretations of the FOIA may be used in construing the PRA (*Times Mirror, supra,* 53 Cal.3d at p. 1338; *Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500, 1514–1515 [5 Cal.Rptr.3d 847], disapproved on another point in *Local 21, AFL-CIO, supra,* 42 Cal.4th at p. 336; *City of San Jose v. Superior Court, supra,* 74 Cal.App.4th at p. 1016), CDCR argued that we should adopt the federal view. Petitioner's initial response to this argument was that the federal cases were inapposite because the PRA and FOIA "differ in critical respects." (See *Local 21, AFL-CIO,* at p. 337, fn. 8, pointing out that interpretations of provisions of FOIA "not comparable" to those of the PRA are not useful.)

Because the briefs originally filed by the parties provided no comparative analysis of the FOIA and PRA and little discussion of the pertinent federal case law, we ordered supplemental briefing on whether FOIA contains a provision similar to subdivision (a) of section 6253 and, if so, whether federal judicial interpretations of the federal act should inform the meaning we attribute to analogous provisions of the state act.

Remarkably, in their supplemental briefing, the parties switched positions regarding the relevance of the FOIA and federal case law. Abandoning its previous view that federal authorities were "inapposite," petitioner now maintains that the FOIA contains a counterpart to section 6253, subdivision (a), and federal judicial interpretations of it convincingly demonstrate that a government agency can redact a portion of a responsive document only if it is statutorily exempt from disclosure. Retracting its earlier position that federal case law persuasively justifies redaction from a disclosed document of information not responsive to a FOIA request, CDCR argues that the federal cases "do not even address the issue."

We agree with petitioner that the FOIA contains a provision analogous to subdivision (a) of section 6253. However, we also agree with CDCR that federal judicial interpretations of FOIA, though often relevant and illuminating, do not directly address the specific questions this case presents: whether information may be deleted from a disclosed document on the ground it is not responsive to the record request and, if so, whether the government agency must justify its claim that the information is outside the scope of the request.

██ The provision of FOIA analogous to section 6253, subdivision (a), which appears immediately after descriptions of the nine exemptions from disclosure allowed by the FOIA, states that "[a]ny reasonable segregable portion of a record shall be provided to any person requesting such record *after deletion of the portions which are exempt under this subsection.*"

(5 U.S.C. § 552(b), italics added.)[11] Section 552(b) has been construed to mean that "FOIA requires an agency to redact only those parts that are exempt and to release the remaining portions of the document. [Citations.] It may, however, withhold parts that cannot be segregated from the whole document because the exempt and nonexempt portions are inextricably bound, and disclosure of the nonexempt parts will reveal exempt information. [Citations.]" (*Cozen O'Connor v. U.S. Dept. of Treasury* (E.D.Pa. 2008) 570 F.Supp.2d 749, 771–772 (*Cozen O'Connor*).)

Title 5 United States Code section 552(b), part of the FOIA, derives from the principle that information may not be withheld "except as specifically stated" in one of the nine statutory exemptions. (§ 552(d).) Although this provision, which is thought to have been intended to prevent courts from creating new exemptions (see Note, *Developments Under the Freedom of Information Act—1974*, 1975 Duke L.J. 416, 425), is a dominant feature of the FOIA (see *Dept. of Air Force v. Rose* (1976) 425 U.S. 352, 361 [48 L.Ed.2d 11, 96, S.Ct. 1592]; *FBI v. Abramson* (1982) 456 U.S. 615 [72 L.Ed.2d 376, 102 S.Ct. 2054]), its application is limited by the provision that the only records an agency is required to "search" for and produce are "those records which are responsive to a request." (5 U.S.C. § 552(a)(3)(D).) Federal judicial interpretations of the FOIA gloss over the relationship between these two provisions, which is significant where, as here, nonexempt information is withheld from an otherwise disclosed document. For the most part, the federal cases petitioner relies upon,[12] stand for the proposition that the provision of the FOIA stating that " '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt' " means " 'that non-exempt

---

[11] Elsewhere, the FOIA also states that "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy [which is the basis of the exemption from disclosure provided under 5 United States Code section 552(b)(6)], an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of [specified] records . . . . However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the *exemption in subsection (b) under which the deletion is made*." (§ 552(a)(2), italics added.)

[12] *Miccosukee Tribe of Indians of Florida v. U.S.* (11th Cir. 2008) 516 F.3d 1235 (*Miccosukee Tribe*); *Sussman v. U.S. Marshals Service* (D.C.Cir. 2007) 377 U.S. App.D.C. [494 F.3d 1106]; *Kimberlin v. Department of Justice* (D.C.Cir. 1998) 329 U.S. App.D.C. 251 [139 F.3d 944]; *Church of Scientology of California v. U.S. Dept. of Army* (9th Cir. 1979) 611 F.2d 738; *Kiraly v. Federal Bureau of Investigation* (6th Cir. 1984) 728 F.2d 273; *Nix v. U.S.* (4th Cir. 1979) 572 F.2d 998; *Hussain v. U.S. Dept. of Homeland Security* (D.D.C. 2009) 674 F.Supp.2d 260; *Cozen O'Connor, supra*, 570 F.Supp.2d 749; *Natural Resources Defense Council v. U.S. Dept. of Defense* (C.D.Cal. 2005) 388 F.Supp.2d 1086; *Church of Scientology of Texas v. Internal Revenue Service* (W.D.Tex. 1993) 816 F.Supp. 1138 (*Church of Scientology of Texas*); *Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State* (N.D.Cal. 1992) 818 F.Supp. 1291.

portions of a document *must be disclosed* unless they are inextricably intertwined with exempt portions.' " (*Kimberlin v. Dept. of Justice, supra*, 139 F.3d 944, 949, italics added, quoting *Mead Data Central, Inc. v. U.S. Dept. of the Air Force* (D.C.Cir. 1977) 566 F.2d 242, 260 (*Mead Data Central*).) Because this statement does not address the question whether the record or portion thereof must be responsive to the request, it is as amenable to petitioner's view—that nonexempt information in a disclosed document must be disclosed regardless whether it is responsive to the FOIA request—as it is to CDCR's different view—that the provision only applies to information that is responsive to the request.

It is clear that an entire document can be withheld on the ground that it is nonresponsive. (See, e.g., *Church of Scientology of Texas, supra*, 816 F.Supp. 1138, 1148 [IRS records "generated subsequent to the date specified in the request are outside the scope of the request and need not be disclosed"].) This follows from the limitation of an agency's obligation to search for and produce records to "those records which are responsive to a request" (5 U.S.C. § 552(a)(3)(D)) and serves to restrict the extent of the search an agency can reasonably be required to make. (See, e.g., *Church of Scientology of Texas*, at p. 1148.) The question here is whether *portions* of an otherwise disclosed document can be withheld solely on the ground that those particular portions are nonresponsive.

Petitioner's argument boils down to the claim that because the numerous FOIA cases it relies upon allow nondisclosure *only* on the basis of an exemption, that is the only reason information may be withheld. That argument is a non sequitur. Moreover, there *are* FOIA cases (albeit not many) in which redactions from a disclosed document of information assertedly not responsive to the request have been approved despite the absence of an applicable exemption. (See, e.g., *News Group Boston, Inc. v. National Railroad Passenger Corp.* (D.Mass. 1992) 799 F.Supp. 1264; *Wilson v. U.S. Dept. of Transportation* (D.D.C. 2010) 730 F.Supp.2d 140.) Since section 552(a)(3)(D) of title 5 of the United States Code limits the search an agency can be required to make to one for responsive documents, it seems to us dubious that the drafters of section 552(b) intended to require a government agency to produce information not responsive to a FOIA request simply because the information is set forth in a disclosed document. Rather, reading section 552(b) in conjunction with section 552(a)(3)(D), there appears to be a threshold assumption that the information required to be disclosed will be responsive to the request for records. And if the redaction of information from a document must be treated in the same manner as the withholding of an entire document, as at least one federal court has suggested (*Cozen O'Connor, supra*, 570 F.Supp.2d at p. 772), a portion of a document *can* be withheld as not responsive to the request without violence to section 552(b), just as the document itself can be withheld as not responsive.

 The PRA contains a provision analogous to 5 United States Code section 552(a)(3)(D) of the FOIA. Section 6253.1, subdivision (a)(1) provides that "[w]hen a member of the public requests to . . . obtain a copy of a public record, the public agency . . . shall . . . [¶] . . . [a]ssist the member of the public to identify records and information *that are responsive to the request or to the purpose of the request,* if stated." (Italics added.) Therefore, despite other language in the same section of the PRA indicating that an agency determination that a request should be denied must be based "solely on an exemption listed in Section 6254" (§ 6253.1, subd. (d)(2)), the PRA embodies the same threshold assumption of the FOIA: that a governmental agency is only required to disclose information responsive to a request.

For the foregoing reasons, we conclude that subdivision (a) of section 6253 does not bar an agency from redacting nonresponsive information from a disclosed document.

However, we do not believe an agency's bare conclusion that information is not responsive to a request is any more self-explanatory than its bare conclusion that information is exempt. Therein lies the genuine problem in this case.

 Like the PRA, FOIA places on the government agency the burden of affirmatively showing that withheld materials need not be disclosed. However, the unusual nature of the statutory processes renders enforcement of the statutory requirements difficult. As pointed out by the District of Columbia Circuit in its seminal opinion in *Vaughn v. Rosen* (D.C.Cir. 1973) 157 U.S. App.D.C. 340 [484 F.2d 820], in a typical FOIA case, as also in a typical PRA case, the plaintiff must argue that the agency from which information is sought has improperly withheld requested documents, even though only the agency knows their actual content, and the plaintiff's lack of knowledge "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." (*Id.,* 484 F.2d at p. 824.) Because of this, the agency must be required provide the requesting party "adequate specificity . . . to assur[e] . . . proper justification by the governmental agency." (*Id.* at p. 827.)

"The *Vaughn* decision marked the beginning of a tool (and in some Circuits, a requirement) that is widely referred to as the '*Vaughn* Index'—*i.e.,* a list containing the information claimed as exempt and the corresponding exemption under which it is claimed. The D.C. Circuit later clarified that a

*Vaughn* Index required 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.' " (*Miccosukee Tribe, supra*, 516 F.3d at p. 1258, quoting *Mead Data Central, supra*, 566 F.2d at p. 251.) In federal circuits that do not require a "*Vaughn* Index," and also in California courts (see, e.g., *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1191–1192 [13 Cal.Rptr.2d 342]), "an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, *or* through a combination of these methods." (*Miccosukee Tribe*, at p. 1258.) "Because the agency has full knowledge of the contents of the withheld records and the requester has only the agency's affidavits and descriptions of the documents, its affidavits must be specific enough to give the requester 'a meaningful opportunity to contest' the withholding of the documents and the court to determine to determine whether the exemption applies." (*Cozen O'Connor, supra*, 570 F.Supp.2d at p. 765, citing *King v. Dept. of Justice* (D.C. Cir. 1987) 830 F.2d 210, 218.) "[T]he agency must describe '*each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information.' " (*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dept. of State, supra*, 818 F.Supp. at p. 1296, quoting *King v. Department of Justice, supra*, 830 F.2d at p. 224.) Conclusory or boilerplate assertions that merely recite statutory standards are not sufficient.[13] (*Halpern v. Federal Bureau of Investigation* (2d Cir. 1999) 181 F.3d 279, 293; *Campbell v. U.S. Dept. of Justice* (D.C.Cir 1998) 164 F.3d 20, 30; *Cozen O'Connor, supra*, 570 F.Supp.2d at p. 765; *Natural Resources Defense Counsel v. U.S. Dept. of Defense, supra*, 388 F.Supp.2d at p. 1106.)

At no time has CDCR provided petitioner *any* explanation of its determination that the redacted information at issue is outside the scope of petitioner's PRA request. All CDCR provided petitioner (at the direction of the court) was a two-page letter dated December 10, 2010, transmitting a 44-page "PRA Log" identifying, with "Bates Numbers," 1,121 documents that were either produced, withheld, or redacted. The documents containing the challenged redactions were all e-mails or e-mail chains, or attachments thereto. The only description of the document was the date it was sent and the names of the CDCR employees who sent and received the message. If a message was sent or received by a person not employed by CDCR, the word "External" was used in lieu of a name or the name was redacted.[14] Each document was

[13] A statement is "conclusory" for our purposes where no factual support is provided for an *essential* element of the claimed basis for withholding information. (See *Senate of the Commonwealth of Puerto Rico v. Dept. of Justice* (D.C. Cir. 1987) 823 F.2d 574, 585.)

[14] As explained in *St. Andrews Park, Inc. v. U.S. Dept. of Army Corps of Engineers* (S.D.Fla. 2003) 299 F.Supp.2d 1264, " '[a] true Vaughn index identifies discrete portions of documents

assigned one or more numbers from one to nine indicating which of the following nine reasons to withhold or redact information CDCR relied upon: "1-Attorney Client Privilege, 2-Attorney Work Product, 3-Safety/Security, 4-Non-responsive to request, 5-Correspondence with Governor's Office, 6-Personal Information, 7-Pending Litigation, 8-Official Information, 9-Protective Order." The designation "6255" signified that withholding or redaction of the document was based on "balancing test or deliberative process." In other words, the only "explanation" petitioner was provided for the redactions petitioner challenges is CDCR's conclusion that the deleted information is "Non-responsive to request."[15]

The burden the FOIA imposes on government agencies to justify nondisclosure is *not* limited to instances in which the agency relies on a statutory exemption. A government agency that withholds nonexempt portions of a document because it is inextricably intertwined with exempt portions cannot merely state its conclusion that the exempt and nonexempt portions are not segregable. In *Church of Scientology of Texas, supra*, 816 F.Supp. 1138, "[t]he only statement regarding segregability the IRS made for each withheld document was: 'The document cannot be segregated for partial release.'" (*Id.* at p. 1162.) As the court stated, the agency "did not explain why the document could not be segregated and released [and] [w]ithout this information the Court is unable to determine *de novo* whether the document can or cannot be segregated." (*Ibid.*) As stated in a leading treatise, a *Vaughn* Index or other explanation provided by a defendant agency "fails the nonsegregability test where a blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability. Rather, for each entry the defendant is required to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.' The defendants must make such

and identifies the exemption pertaining to each portion of the document. In most cases, such an index provides the date, source, recipient, subject matter and nature of each document in sufficient detail to permit the requesting party to argue effectively against the claimed exemptions and for the court to assess the applicability of the claimed exemptions.' [Citations.]" (*Id.* at p. 1271.) In that case, the defendant agency improperly listed as a single document strings of e-mails comprising several individual e-mails. As the court stated, "[e]ach such e-mail is a separate document, with its own time and date, and should be listed individually so that the Court may properly ascertain the exemption being claimed as to *each* individual document." (*Ibid.*) Although CDCR did not provide the subject matter and nature of the e-mails at issue in this case, and did not always identify senders and recipients, it appears it did treat each of the individual e-mails as a separate document.

[15] Obviously, *all* of the information shown by the PRA Log to have been withheld or redacted, not just that deleted by the challenged redactions, was inadequately justified by a boilerplate conclusion. This appeal does not, however, require us to address the withholding of any information other than that identifying the pharmaceutical companies from which CDCR tried to obtain sodium thiopental and information withheld as not responsive to the PRA request.

findings for each document. As always, it is incumbent on the agency to prove that no segregable information exists. Without any description of the factual materials contained in the withheld documents, the agency has not satisfied its obligations. The declarations must provide the plaintiff a 'meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.' " (1 O'Reilly, Federal Information Disclosure (June 2011 Supp.) § 9:18, p. 456, quoting *Wilderness Society v. U.S. Dept. of the Interior, supra*, 344 F.Supp.2d at p. 18.)

 Government agencies are, of course, entitled to a presumption that they have reasonably and in good faith complied with the obligation to disclose responsive information. But that presumption cannot be permitted to obstruct the prodisclosure purposes of the PRA and the FOIA, which create a statutory presumption that all governmental records are available to any person. (See *National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, 174 [158 L.Ed.2d 319, 124 S.Ct. 1570].) Though agency claims that information is exempt from disclosure or that exempt and nonexempt information is not segregable differ from agency claims that information is not responsive to the request (because the latter does not relate to the applicability of an exemption aimed at preventing a specific harm), the effect of granting such claims is identical: information is withheld from the public. Therefore, if an agency's claim that information is beyond the scope of the request can be sustained without the detailed justification necessary to sustain a claim that information is exempt or not segregable, agencies could use such claims to relieve themselves of the need to provide the "detailed justification" ordinarily required to withhold information. The scope of the search agencies are required by the FOIA to undertake need only be reasonably calculated to locate responsive documents (see *Meerepol v. Meese* (D.C.Cir. 1986) 790 F.2d 942, 952–956), and it is often not easy to say what is reasonable in the circumstances. The difficulty in this area also arises from the fact that the scope of the search is determined by the scope of the request. Because the requestor may not know what documents or information of interest an agency possesses, he or she may be unable to provide the specificity an agency may require. Moreover, government agencies—particularly those with an incentive not to assist in the dissemination of their files (see, e.g., *Capitol Cities Communications, Inc. v. National Labor Relations Bd.* (N.D.Cal. 1976) 409 F.Supp. 971)—may demand an unreasonable level of specificity.[16]

---

[16] "The legal standard is whether the requestor has been specific enough so that a professional employee of the agency, familiar with the general subject area, could reasonably be expected to find the desired documents. The [FOIA] does not demand specific particularity, because the 1974 amendments consciously loosened a former requirement that had been used by agencies to weed out requests on grounds of overbreadth. An agency cannot withhold a record that is reasonably within the scope of the request on grounds that this record had not been specifically named by the requestor. If the requestor is not sure of the nature of agency

Indeed, where an agency seeks to withhold portions of an otherwise disclosed document solely on grounds of nonresponsiveness, there may be a particular reason for concern. The need for redaction in such circumstances seems highly questionable, as the information is not claimed to be exempt and therefore does not pose the risks addressed by the statutory exemptions from the rule of disclosure. Unlike the case of a nonresponsive *document*, where an agency can save time and resources by avoiding a document search, redaction of nonresponsive (but not exempt) portions of an otherwise responsive document would *increase* the burden on the agency.[17] For this reason— because it is difficult to conceive of the reason an agency would choose to assume this burden—this situation raises the risk of an agency using nonresponsiveness as an excuse to avoid disclosure of information that is not exempt but that the agency for some other reason does not want public. The most effective way in which a trial court can insure the reasonableness of a claim that information sought to be withheld is not responsive to the request is to require the agency to explain the claim in the same detail needed to justify other grounds for withholding public records.

 Because we shall remand this case for further proceedings in the trial court, one other matter warrants brief discussion: the propriety of determining CDCR's compliance with the requirements of the PRA on the

documents on a given subject—then the loosened FOIA specificity requirement will help." (1 O'Reilly, Federal Information Disclosure, *supra*, § 9.17, p. 339, fns. omitted.)

[17] The present case illustrates the point. Claims that information sought by a plaintiff is nonresponsive to the request are most commonly made to limit the extent of the search an agency can reasonably be required to make. (See, e.g., *Church of Scientology of Texas, supra*, 816 F.Supp. at p. 1148.) Here, the information at issue is contained in a document that CDCR searched for, found and produced; a ruling approving the challenged redactions would therefore not save the agency any time or money. Moreover, even if the redacted information is somehow outside the scope of the search, its disclosure would apparently not have any of the adverse consequences the PRA was designed to prevent, because the information is not claimed to fall within any statutory exemption. There may be some compelling reason CDCR insists on withholding the information it claims is nonresponsive, but none appears in the record before us. CDCR's refusal to disclose the information redacted from the two September 28, 2010 e-mails may therefore have been gratuitous (see *Ditlow v. Volpe* (D.D.C. 1973) 362 F.Supp. 1321, 1326 ["The only thing more puzzling than why Plaintiffs would want these documents is why Defendants refuse to disclose them."]), and the cost of defending the redactions in protracted legal proceedings an unnecessary and imprudent expenditure of public money. (See *Mead Data Central, supra*, 566 F.2d at pp. 261–262.) We therefore think it appropriate to emphasize that the withholding of information authorized by the PRA, like that allowed under the FOIA, is not mandatory; it is discretionary and can be waived. (*Block, supra*, 42 Cal.3d at p. 652.) Both acts represent legislative "determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses." (*EPA v. Mink* (1973) 410 U.S. 73, 80 [35 L.Ed.2d 119, 93 S.Ct. 827], superceded on another point in *NLRB v. Robbins Tire & Rubber Co.* (1978) 437 U.S. 214, 226 [57 L.Ed.2d 159, 98 S.Ct. 2311].) Like federal courts, we believe government agencies should be encouraged to disclose material, even that which is exempt, "for which there is no compelling reason for withholding." (*Mead Data Central, supra*, 566 F.2d at p. 261.)

basis of in camera review. As the federal experience shows, "[i]n camera inspection of disputed documents places very burdensome demands on federal trial courts, and it is unreasonable to expect the courts to do as thorough an investigation as would a party interested in forcing disclosure, particularly where the documents involved run to hundreds or thousands of pages. [Citations.]" (*Mead Data Central, supra,* 566 F.2d at p. 250, fn. 10.) In camera inspection in the trial court also creates problems for appellate review. As in the present case, trial court opinions "are generally stated in conclusory terms, and the disappointed requestor is not in a position to challenge those conclusions or even to assist the appellate court in focusing its inquiry." (*Ibid.*) In short, as the Ninth Circuit has said, it "cannot stress strongly enough," a trial court's prerogative to inspect documents in camera "is not a substitute for the government's burden of proof, and should not be resorted to lightly" (*Church of Scientology of California v. U.S. Dept. of the Army, supra,* 611 F.2d at p. 743), as was done in this case. For the foregoing reasons, "[i]n camera, ex parte review, though permitted under FOIA and sometimes necessary, is generally disfavored—it 'is not a substitute' for the government's obligation to justify its withholding in publically available and debatable documents [citation], and it should be invoked only when the issue at hand ' "could not be otherwise resolved" ' [citation]." (*Schiller v. National Labor Relations Bd.* (D.C.Cir. 1992) 296 U.S. App.D.C. 84 [964 F.2d 1205, 1209], disapproved on other grounds in *Milner v. Department of Navy* (2011) 562 U.S. \_\_\_, \_\_\_, \_\_\_ [179 L.Ed.2d 268, 131 S.Ct. 1259, 1263, 1267].) Where, as in this case, the requestor of information is not provided anything to support the asserted nonresponsiveness of the information, and therefore cannot effectively contest the claim, an in camera examination by the court is least reliable and cannot be dispositive. (See *St. Andrews Park, Inc. v. U.S. Dept. of the Army Corps of Engineers, supra,* 299 F.Supp.2d 1264, 1271.) There doubtless are cases in which an agency should not be asked to employ affidavits or oral testimony to establish to the satisfaction of a trial court that information sought by a plaintiff is clearly beyond the scope of the request, and ex parte in camera review is necessary, but this is not such a case.

## DISPOSITION

Insofar as it authorizes CDCR to withhold documents identifying pharmaceutical companies and other entities from which CDCR sought to obtain sodium thiopental and to redact portions of disclosed documents the agency deems "not responsive" to petitioner's PRA request, the judgment is reversed.

The cause is remanded to the superior court for further proceedings consistent with this opinion. Costs on appeal are awarded petitioner. As the petition seeks an award of attorney fees, and petitioner is entitled to such an award under Government Code section 6259, the trial court should determine the amount to be awarded.

Lambden, J., and Richman, J., concurred.